In re John E. STRONG and Rebecca M. Strong, Debtors.

John E. STRONG and Rebecca M. Strong, Plaintiffs,

v.

UNITED STATES of America DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. 92 B 26046.
Adv. No. 96 A 00139.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 10, 1996.

---

John C. Gottlieb, Richter & Jaros, Oak Brook, IL, for plaintiffs.

Joel R. Nathan, Assistant .U.S. Attorney, Robert Little, Special Assistant U.S. Attorney, Chicago, IL, for defendant.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the renewed motion of the United States of America Department of the Treasury, Internal Revenue Service (the "IRS") pursuant to Federal Rule of Civil Procedure 12(b)(6), incorporated by reference in Federal Rule of Bankruptcy Procedure 7012, to dismiss the complaint of John E. and Rebecca M. Strong (the "Debtors") and on the motion of the IRS to deny a portion of the Debtors' objection to the IRS's secured proof of claim. Pursuant to their objection, the Debtors seek to reclassify the IRS's claim. The Debtors' complaint seeks to determine the extent of the IRS's liens on certain property and to obtain a declaratory judgment in that regard.

For the reasons set forth herein, the Court hereby denies the motion to dismiss. Further, the Court denies the motion of the IRS attacking the Debtors' objection to its claim, and sustains, in part, the Debtors' objection thereto. Pursuant to 11 U.S.C. §§ 502(b) and 506(a), the Court determines that the secured component of the IRS's claim at the time of confirmation of the Debtors' second amended plan was $9,160.00; the unsecured priority portion was $33,905.16; and the general unsecured portion was $15,542.50 for a total of $58,607.66 as an allowed claim. The recorded tax liens of the IRS in excess of its allowed secured claim are modified and avoided pursuant to 11 U.S.C. § 1322(b)(2) as against property of the estate and the Debtors..

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(B), (K), and (O).

## II. FACTS AND BACKGROUND

The parties have stipulated to many of the facts. The Debtors owed income tax for the years 1984 and 1985. On July 13, 1988, the Debtors filed a Chapter 7 bankruptcy petition in the Bankruptcy Court for the Northern District of Iowa. The Debtors received a discharge in that case on October 20, 1988. The parties agree that the discharge covered the penalties charged by the IRS for the Debtors' failure to pay those years' taxes.

On May 22, 1991, the IRS filed a Notice of Tax Lien with the DuPage County, Illinois Recorder's office, providing notice for the unpaid assessments for income tax owed by the Debtors for the years 1984, 1985, and 1989 in the sum of $33,363.08. See Exhibit A to Stipulation of Facts. On July 26, 1991, the IRS filed a Notice of Tax Lien with the DuPage County Recorder's office, providing notice of the unpaid assessment of income tax owed by the Debtors for the year 1990 in the amount of $17,752.96. See Exhibit B to Stipulation of Facts.

On November 20, 1992, the Debtors filed a joint Chapter 13 bankruptcy petition. The case was assigned to the Honorable Eugene R. Wedoff.[1] The Debtors filed their schedules and statement of affairs on December 18, 1992. They valued their residence at $205,000.00, subject to a mortgage lien of $202,052.00 and a tax lien of $20,000.00. Their personal property was valued at $8,220.00. The IRS was listed among their secured creditors as the only secured tax claimant with $17,052.00 listed for the unsecured portion of its claim. The IRS was also scheduled among the unsecured priority claimants for a total of $53,944.00 for unpaid prepetition income and self-employment taxes plus interest for the years 1989–1992.

The Debtors filed their original Chapter 13 plan on December 18, 1992, which among other things, proposed to deal with the secured mortgage lien claim on their residence and pay all other secured creditors' allowed claims in full, plus interest, and allowed priority tax claims until paid in full. It was a 36 month term plan to complete upon payment to the Standing Chapter 13 Trustee of the greater of a sum certain or 100% payment of allowed unsecured priority claims and secured claims provided by the plan, plus administrative expenses. This plan did not specify exactly how much the IRS was to be paid on which unpaid taxes.

Thereafter, notice was sent out on January 12, 1993 of a 11 U.S.C. § 341 meeting of creditors set for February 11, 1993, and a subsequent confirmation hearing before Judge Wedoff set for March 19, 1993. The notice was sent to creditors and parties in interest including the IRS at its three separate addresses in both Chicago, Illinois and Kansas City, Missouri. The notice summarized the Debtors' original plan and specifically referenced the IRS as being scheduled for $2,948.00 as a secured creditor and $17,052.00 as an unsecured creditor.

At the confirmation hearing, the Debtors filed a second amended Chapter 13 plan (the "Plan"), which provided in pertinent part:

1. The bankruptcy case was reassigned to the undersigned in 1994.

2. From the payments so received, the trustee shall make disbursements as follows:

> (b) Holders of *allowed secured claims* shall retain the liens securing such claims and shall be paid as follows:
>
>> 1 Except for arrearages as of the petition date, the secured claim of Source One Mortgage Services Corp. holding a mortgage on the Debtors' residence is to be paid directly by the Debtors.
>>
>> .    .    .    .    .
>>
>> 4 *All other secured creditors shall be paid in full with post petition interest at the nondefault contract rate, if any, otherwise the lesser of 9% per annum simple interest or the statutory interest rate from time to time prevailing.*

.    .    .    .    .

4. The Plan shall complete upon payment to the Trustee of the greater of (a) $100,-332, *or (b) 100% payment of allowed timely filed priority claims and secured claims provided for by this Plan plus administrative expenses.*

(emphasis supplied). The record does not reveal that the IRS appeared at the confirmation hearing or raised any objection before it was concluded. Judge Wedoff executed the order confirming the Plan for a 36 month term requiring payments of $666.00 for the first month, $2,596.00 for the second month, and $2,855.00 for the remaining 34 months. Secured creditors' allowed claims and allowed timely filed priority claims, plus administrative expenses, were to be paid 100% and unsecured creditors' allowed claims were to receive a pro rata share after payments to secured and priority claimants.

It is significant that there was nothing in the text of the Plan or the confirmation order that determined the precise component amounts of the IRS's secured, unsecured priority, and unsecured general prepetition

claim, or established a set amount to be paid on such components of the IRS's claim for unpaid prepetition taxes plus interest and penalties owed by the Debtors. Under the confirmed Plan, the Debtors would pay the Chapter 13 Standing Trustee a total of $100,-332.00 ($666.00 + $2,596.00 + (34 × $2,855.00) or $92,070.00) in order to pay all "allowed" secured, priority unsecured, and expenses of administration, and deal with the prepetition secured mortgage arrearages.

The IRS filed a proof of claim in the amount of $68,669.14 on April 12, 1993. *See* Exhibit C to Stipulation of Facts. Thereby the IRS claimed the Debtors owed a total of $66,001.22 in secured debt, $2,054.83 in priority unsecured debt, and $613.09 in general unsecured debt. Although time may heal all wounds, where both parties to contested bankruptcy claims wait years, the factual and legal complexity of the dispute is exacerbated. Here neither party did anything for almost three years.

Then, on February 1, 1996, the Debtors filed an objection to the IRS's claim along with an adversary proceeding to determine the extent of the IRS's secured lien. In their objection, the Debtors seek to disallow the IRS's secured claim to the extent that it is greater than the value of the Debtors' unencumbered property at the time they filed their Chapter 13 petition. Further, the Debtors seek an order "reclassifying" the IRS's secured claim as follows: $5,810.00 [2] secured, $33,905.16 unsecured priority, and $18,892.50 unsecured general claim, and disallowing $10,061.48 of the claim. The disallowance relates to the penalties discharged in their prior bankruptcy case. To the extent that the Court disallows the IRS's secured claim, the Debtors seek a determination that the lien of the IRS is void under 11 U.S.C. § 506(d) as to the unsecured portion of its claim.

**2.** The Debtors now concede that the value of the property subject to the IRS's lien at the time of filing of the petition includes the value of all their unencumbered property. Thus, the Debtors agreed at the time of trial that the IRS's secured claim exceeds the $5,810.00 originally alleged by them and further state that the claim can be allowed as secured to the extend of the $9,160.00 value of the Debtors' unencumbered property, both real and personal as discussed infra. *See* 26 U.S.C. §§ 6321 and 6334(a); *see also In re Beard,* 112 B.R. 951, 954 (Bankr.N.D.Ind.1990) (collecting cases).

The parties agree that as of the petition date and the effective date of the Debtors' Plan, the value of the Debtors' residence located at 29 W 025 Geneva Road, West Chicago, Illinois (formerly known as 770 Prince Crossing Road, West Chicago, Illinois) was $205,000. As of the petition date and the effective date of the Plan, the Debtors' residence was subject to a first mortgage of Source One Mortgage Corporation ("Source One") in the amount of $204,060.93. Source One had recorded its mortgage on the Debtors' residence before any of the IRS Notice of Tax Liens were recorded. As of the petition date and the effective date of the Plan, the value of the Debtors' residence, in excess of the mortgage balance due Source One, was $940.00. Thus, as of the petition date and the effective date of the Plan, and after deducting Source One's mortgage claim, the aggregate remaining value of the Debtors' real and personal property totaled $9,160.00 (real property $940.00 and personal property $8,220.00), to which the IRS's recorded tax liens attached. Therefore, the Debtors argue that the IRS's secured lien claim should be limited to $9,160.00. Hence, the Debtors seek to "strip" the IRS's secured lien claim from $66,001.22 to $9,160.00 via 11 U.S.C. §§ 506(a) and 506(d).

The IRS concedes that portions of its secured claim of $2,038.61 and $8,022.87 for penalties for tax years ending December 1984 and 1985, respectively, should be disallowed in their entirety as these penalties were discharged in the Debtors' prior bankruptcy case. Nevertheless, the IRS argues that the Debtors are now barred from challenging the remaining extent of the secured portion of the IRS's claim after confirmation of their Plan by virtue of the doctrine of res judicata via 11 U.S.C. § 1327. Further, the IRS maintains that the Debtors may not change the basic structure of their confirmed Plan, including reclassification of a claim, midway through consummation of the Plan. Moreover, the IRS contends that there is no statutory basis for the Debtors' request for a valuation of their residence and a voiding of the federal tax liens encumbering it because after confirmation, the Plan called for the property to revest in the Debtors and, thereafter, the residence was no longer property in which the Chapter 13 estate has an interest. Hence, §§ 506(a) and 506(d) do not provide a statutory basis for the requested lien strip.

By the time of trial,[3] the Debtors conceded that the secured component of the IRS's claim extended not only to the equity in the residence, but also to their personal property. The parties stipulated that after a reduction for the portion of the IRS's filed proof of claim discharged in their previous bankruptcy case, the appropriate amount of the IRS's claim to be allowed, if its res judicata defense is rejected by the Court, is as follows:

| Tax/Tax Period | Date Assessed | Tax Due | Interest | Penalty | Total |
|---|---|---|---|---|---|
| | | Secured | Claim | | |
| Income 1984 | 02/06/89 | $2,101.63 | $3,611.66 | | $5,713.29 |
| Income 1985 | 04/24/89 | $0.00 | $3,446.71 | | $3,446.71 |
| Subtotal | | | | | $9,160.00 |
| | | Priority | Claim | | |
| Income 1989 | 12/24/90 | $10,004.41 | $3,400.57 | | $13,404.98 |
| Income 1990 | 06/10/91 | $15,795.00 | $2,650.35 | | $18,445.35 |
| Income 1991 | 11/16/92 | $1,942.00 | $112.83 | | $2,054.83 |
| Subtotal | | | | | $33,095.16 |
| | | General | Claim | | |
| Income 1985 | 04/24/90 | | $6,641.69 | | $6,641.69 |

3. The matters were tried on the stipulated facts and papers submitted by the parties. The Court took these matters under advisement on November 22, 1996.

| Tax/Tax Period | Date Assessed | Tax Due | Interest | Penalty | Total |
|---|---|---|---|---|---|
| Income 1989 | 12/24/90 | | | $4,301.89 | $4,301.89 |
| Income 1990 | 06/10/91 | | | $3,985.83 | $3,985.83 |
| Income 1991 | 11/16/92 | | | $613.09 | $613.09 |
| Subtotal | | | | | $15,542.50 |
| Total | | | | | $58,607.66 |

## III. STANDARDS FOR A MOTION TO DISMISS

In order for the IRS to prevail on its motion to dismiss under Rule 12 and its bankruptcy analogue Rule 7012, it must clearly appear from the pleadings that the Debtors can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Colfax Corp. v. Illinois State Toll Highway Authority*, 79 F.3d 631, 632 (7th Cir.1996) (citation omitted); *Meriwether v. Faulkner*, 821 F.2d 408, 411 (7th Cir.), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). The Seventh Circuit has emphasized that "[d]espite their liberality on pleading matters ... the federal rules still require that a complaint allege facts that, if proven, would provide an adequate basis for each claim." *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir.1988) (citations omitted). It is well established that alleging mere legal conclusions, without a factual predicate, is inadequate to state a claim for relief. *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Moreover, the Court must take as true all well pleaded material facts in the complaint, and must view these facts and all reasonable inferences which may be drawn from them in a light most favorable to the Debtors. *See Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir.1995); *Infinity Broadcasting Corp. of Illinois v. Prudential Ins. Co. of America*, 869 F.2d 1073, 1075 (7th Cir.1989); *Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 611 (7th Cir.1989); *Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987). The issue is not whether the Debtors will ultimately prevail, but whether they have pleaded a cause of action sufficient to entitle them to offer evidence in support of their claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F.Supp. 1399, 1406 (N.D.Ill. 1996) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990)).

## IV. DISCUSSION

### A. Are the Debtors barred from challenging the extent of the IRS's liens after confirmation of their Chapter 13 Plan under the doctrine of res judicata?

The IRS contends that the Debtors are barred from challenging the extent of the IRS's liens after confirmation of their Plan by virtue of the doctrine of res judicata and 11 U.S.C. § 1327(a). The IRS maintains that the Debtors' opportunity to establish the value of their assets and to challenge the extent of the IRS's liens was at the confirmation hearing. Further, the IRS argues that the Debtors cannot change the basic structure of a confirmed plan, including reclassification of a claim, mid-way through completion of their Plan.

This case illustrates the potential problems that arise when secured claim holders do not file proofs of claim prior to the confirmation of the plan and objections thereto are not filed until years later. Federal Rule of Bankruptcy Procedure 3002[4] is silent on whether or when a secured claim holder must file a proof of claim to protect its rights in a Chapter 13 case. Nothing in the Bankruptcy Code or Bankruptcy Rule

---

4. Bankruptcy Rule 3002(a) provides in relevant part that "[a]n unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed...." Fed.R.Bankr.P. 3002(a).

3002(a) requires a secured claim holder to file a claim.[5] *See In re Burrell*, 85 B.R. 799, 800 (Bankr.N.D.Ill.1988). The United States Supreme Court reemphasized this reasoning by concluding that failure to file does not ipso facto affect a lien's validity. *See Dewsnup v. Timm*, 502 U.S. 410, 417–18, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992) (holding that Chapter 7 debtors cannot use § 506(d) to strip down undersecured claims). Though *Dewsnup*'s often criticized majority holding precluded §§ 506(a) and 506(d) lien strips in Chapter 7 cases, many courts have declined to extend that holding in the reorganization chapters. *See, e.g., In re Hernandez*, 175 B.R. 962, 965–66 (N.D.Ill.1994) (collecting cases); *In re Flowers*, 175 B.R. 698, 702 (Bankr.N.D.Ill.1994), *aff'd, Bank One, Chicago, N.A. v. Flowers*, 183 B.R. 509, 514 (N.D.Ill.1995); *In re McDade*, 148 B.R. 42, 44 (Bankr.S.D.Ill.1992); *Sapos v. Provident Inst. of Sav.*, 967 F.2d 918, 924–25 (3d Cir. 1992); *In re Bellamy*, 962 F.2d 176, 182–83 (2d Cir.1992); *Ford Motor Credit Co. v. Lee (In re Lee)*, 162 B.R. 217, 224 (D.Minn.1993).

*Hernandez* and *Flowers* both distinguished *Dewsnup* and declined to preclude lien stripping in Chapter 13 cases because of the provisions of 11 U.S.C. §§ 1322(b)(2) [6] and 1325(a)(5)(B).[7] The Court also concludes that the prevailing and better view is to limit *Dewsnup*'s holding to Chapter 7 cases.[8] In light of the rationales favoring lien stripping in Chapter 13 cases set forth in *Hernandez*

and *Flowers*, the Court is persuaded that it should follow suit.

If a secured creditor seeks distribution from the Chapter 13 Standing Trustee administering a confirmed plan it must file a proof of claim. Bankruptcy Rule 3021 requires distributions pursuant to plans to be made only to those creditors whose prepetition claims are allowed after confirmation.[9] An allowed claim under 11 U.S.C. § 502 is one that has been filed pursuant to 11 U.S.C. § 501. Thus, in order for both secured and unsecured claims to be paid, they must be "allowed" after they have been filed under § 501. Consequently, as a practical matter, a secured creditor must file a claim to participate in and receive dividends or other distributions under a Chapter 13 plan.

The Court respectfully disagrees with the decision in *In re Schaffer*, 173 B.R. 393 (Bankr.N.D.Ill.1994) which held that a secured claim holder who seeks to participate in the receipt of disbursements from the Chapter 13 trustee must comply with the same time requirement for filing claims imposed on unsecured creditors. *Id.* at 397–98. The Court adheres to the majority view discussed in *Burrell* that concludes that neither the Bankruptcy Code nor Bankruptcy Rule 3002(a) requires a secured claim holder to file a proof of claim within 90 days of the first

---

5.  The Bankruptcy Reform Act of 1994 cleared up some, but not all, of the confusion with respect to the "timely" filing of secured claims by governmental units in cases filed after October 22, 1994. Section 213 of the Bankruptcy Reform Act of 1994 amended § 502(b)(9) to provided that "a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide." 11 U.S.C. § 502(b)(9) as amended by Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 213, 108 Stat. 4106 (1994).

6.  Section 1322(b)(2) provides:

    (b) Subject to subsections (a) and (c) of this section, the plan may—
    (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2).

7.  Section 1325(a)(5)(B) provides:

    (a) Except as provided in subsection (b), the court shall confirm a plan if—
    (5) with respect to each allowed secured claim provided for by the plan—
    (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the amount of such claim.
    11 U.S.C. § 1325(a)(5)(B).

8.  Prior to *Dewsnup*, the Seventh Circuit allowed lien strips. *See In re Lindsey*, 823 F.2d 189, 191 (7th Cir.1987).

9.  Bankruptcy Rule 3021 provides in relevant part that "[a]fter confirmation of a plan, distribution shall be made to creditors whose claims have been allowed...." Fed.R.Bankr.P. 3021.

date set for the meeting of creditors. 85 B.R. at 800.

The instant disputes highlight the obvious disharmony and timing differentials between the claims allowance and objection process involving §§ 501–503 and § 506, and the binding effect of a confirmed Chapter 13 plan through § 1327 and the plan confirmation process. One of the ultimate issues is whether the doctrine of res judicata and § 1327(a) precludes the Court from ruling post-confirmation on the instant claim objection by the Debtors to the IRS's subsequently filed secured claim. Historically in this District and Division, like others, Chapter 13 confirmation hearings are held prior to expiration of the claims bar date prescribed under Bankruptcy Rule 3002 in order to expedite case administration and get dividend distributions from the Chapter 13 Standing Trustee to the creditors as soon as possible, rather than wait for the completion of the sometimes lengthy claims objection process.

■ Under Section 1327(a) of the Bankruptcy Code, the terms of a confirmed plan bind all creditors, whether or not their claims are provided for, and whether or not they have objected to the plan. *See* 11 U.S.C. § 1327(a) [10]; *see also In re Puckett*, 193 B.R. 842, 845 (Bankr.N.D.Ill.1996); *In re Randall*, 98 B.R. 916, 918 (Bankr.N.D.Ill.1989). Thus, § 1327(a) creates a res judicata effect that prevents the bankruptcy court from reconsidering matters that were disposed of by the confirmed plan. *Puckett*, 193 B.R. at 845. "As a general rule, the failure to raise an 'objection at the confirmation hearing or to appeal from the order of confirmation should preclude ... attack on the plan or any provision therein as illegal in a subsequent proceeding.'" *Id.* (quoting *In re Chappell*, 984 F.2d 775, 782 (7th Cir.1993)).

■ The true extent of the res judicata effect of a Chapter 13 confirmation order entered pursuant to § 1327(a) is, however, a complex and thorny conundrum which has vexed courts and parties, and on which there is a broad spectrum of diverse opinion. *See* 2 Keith M. Lundin, *Chapter 13 Bankruptcy* §§ 6.10–6.14 (2d ed.1994 and 1996 Supp.) (collecting cases). Because the IRS received timely and adequate notice of the confirmation hearing, but failed to object, it is now bound by the terms of the Plan which required all of its allowed secured claims and priority claims to be paid 100%, but did not purport to determine the exact amounts thereof. Although somewhat belated, the Court is now asked to make the claim allowance determination in light of the Debtors' objection to the IRS's filed proof of claim.

■ The Seventh Circuit Court of Appeals upholds confirmation orders as required by § 1327, vis a vis res judicata principles, as to objections to confirmation. *See Chappell*, 984 F.2d at 782; *In re Pence*, 905 F.2d 1107, 1110 (7th Cir.1990). This rule, however, is subject to the proviso that if the plan does not provide for full payment of priority claims as required by § 1322(a)(2),[11] it has no res judicata effect as to the omitted priority claims and can be vacated. *See In re Escobedo*, 28 F.3d 34, 36 (7th Cir.1994). None of these cases, of course, precluded the post-confirmation claims objection and allowance process.

The record in this matter is distinguishable from the situation in *Pence*, wherein the debtors at the confirmation hearing put on evidence of value for property to be surrendered to the secured creditor under the plan in satisfaction of that secured claim. There is no showing here that any such evidence was submitted at the confirmation hearing. In *Pence*, the creditor was held bound to such collateral valuation made at the time of confirmation. No such valuation determination was made in the case at bar, and the Plan provided that "holders of allowed secured claims shall retain the liens securing such claims."

---

10. Section 1327(a) provides:

> (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
> 11 U.S.C. § 1327(a).

11. Section 1322(a)(2) provides:

> (a) The plan shall—
> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim.
> 11 U.S.C. § 1322(a)(2).

▮ Pursuant to the doctrine of res judicata, a party must prove three elements: (1) an identity of parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. *Andersen v. Chrysler Corp.*, 99 F.3d 846, 852 (7th Cir. 1996) (citing *Kratville v. Runyon*, 90 F.3d 195, 197 (7th Cir.1996)). Res judicata bars not only matters determined in a prior suit, but matters which could have been determined in that suit but were not raised. *Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 338 (7th Cir.1995). The doctrine does not bar litigation of an issue when a party did not have a full and fair opportunity to litigate the issue in the original case. The party invoking res judicata bears the burden of proving its applicability. *Rooding v. Peters*, 92 F.3d 578, 580 (7th Cir.1996) (citing Illinois law).

The Court concludes that the instant adversary proceeding and claim objection is neither precluded by § 1327 nor the doctrine of res judicata. Here the second and third elements are not present to bar the Debtors' claim objection and adversary complaint. At the time of confirmation, the IRS had not filed its proof of claim and the Debtors had not objected thereto. Therefore, the disputes at bar were not actually litigated nor, as a practical matter, could they have been litigated at the time of confirmation. Furthermore, the Plan did not set a value on the residence.[12] The issue of the extent or amount to which the IRS's claim was secured was not raised until the IRS filed its proof of claim and the Debtors objected thereto several years after confirmation of the Plan. The precise amount of the IRS's claim was not set forth in the Plan, and the Debtors did not raise the challenge to the allowed amount of the claim through a provision in the confirmed Plan. What is requested here is sought for the first time—a judicial finding to determine the proper respective amounts of the secured, priority unsecured, and general unsecured portions of the IRS's claim, and to have same allowed by the Court as of the effective date of the confirmation of the Plan. The Court finds that the doctrine of res judicata does not bar the Debtors from challenging the extent of the IRS's liens through the claims objection process after confirmation of their Plan. Neither the Code nor the Rules precludes this from occurring postconfirmation.

▮ The Court believes the better view is that taken by *In re Lewis*, 875 F.2d 53 (3d Cir.1989), that confirmation does not preclude Chapter 13 debtors from challenging the extent of security for a claim under § 506 notwithstanding a provision of the plan that recited that confirmation "shall constitute a finding that [the creditors] are holders of secured claims." *Id.* at 56. *See also* 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 6.10 at p. 6-25 ("When the precise amount of a creditor's claim is not set forth in the plan or when the debtor has not challenged the allowed amount of a secured claim through a provision in the confirmed plan, … confirmation does not preclude litigation of the amount of claims or the extent of secured claims."). Moreover, because confirmation of a Chapter 13 plan is res judicata only as to issues that can be raised in the less formal procedure for contested matters, confirmation generally cannot have preclusive effect as to the validity of a lien, which must be resolved in an adversary proceeding as mandated by Fed.R.Bankr.P. 7001(2). *See Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 92–93 (4th Cir.1995); *Beard*, 112 B.R. at 955–56. Unless the lien avoidance is actually litigated, confirmation has no preclusive effect and does not bind a secured creditor on the scope or validity of its lien. *Cen–Pen*, 58 F.3d at 93. Consequently, the confirmation order is not res judicata nor does § 1327(a) control or answer the question of the appropriate amount to be allowed on the various components of the IRS's filed proof of claim.

**B. Do the Debtors have a statutory basis for their request for a valuation of their residence and a voiding of the federal tax liens against the residence?**

▮ Next, the IRS argues that there is no proper statutory basis for the Debtors' request for a valuation of their residence and

---

12. Therefore, this matter is not factually akin to *In re Ross*, 162 B.R. 785, 789–90 (Bankr.N.D.Ill. 1993) wherein the Court held that the value of the collateral stated in the plan became binding upon the debtors and the creditor.

a voiding of the federal tax liens against the residence because the residence is no longer property in which the Chapter 13 estate has an interest. The IRS contends that the allowed secured claims to which § 506(a) refers is limited to those "secured by a lien on property in which the estate has an interest." Thus, the avoiding powers of § 506(d) can only be exercised vis a vis property of the estate, and once property has left the bankruptcy estate, the lien strip cannot be done under § 506(d). The Debtors contend that § 506(a) and § 506(d) provide a statutory basis for the Court's determination, at this stage of the case, that the IRS's claim is a secured claim only to the extent of the value of the Debtors' unencumbered interest in the property. Upon a determination that the value of the Debtors' unencumbered interest is less than the IRS's claim, the Debtors argue that the Court can allow a portion of the claim as an allowed secured claim only to the extent of the Debtors' interest. The remainder of the claim can only be allowed as an unsecured claim, but the liens in the amount exceeding the value of the equity in the Debtors' residence and their personalty at the time of the petition and confirmation can be avoided via § 506(d). The Court agrees with the Debtors' in principle on this point, but § 1322(b)(2) has already accomplished this.

When the Debtors filed this bankruptcy case, § 541(a) created an estate, composed of, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The residence was undisputedly included in the estate at the time of filing. After confirmation of the Plan, however, the question remains regarding the effect of the revesting of property of the estate in the Debtors under the Plan's express terms. The revesting provisions of § 1327(b) [13] have produced a number of sharply divided decisions because of the legislative void, largely unexplored and undecided from which ema-

nate many questions about exactly what happens after confirmation. *See, e.g., In re Fisher,* 198 B.R. 721, 723–34 (Bankr.N.D.Ill. 1996) (setting forth various views and collecting cases).

■ This Court, however, adheres to the view that once a Chapter 13 plan is confirmed, and that plan provides that the property of the estate revests in the debtor, only such future income necessary to fund the confirmed plan remains property of the estate. *See In re Ziegler,* 136 B.R. 497, 500 (Bankr.N.D.Ill.1992). Section 1141(b) of the Bankruptcy Code, whose language is identical to that of § 1327(b), has been interpreted as transferring the property of the estate to the debtor and terminating the estate. *See Fisher,* 198 B.R. at 725 (citations omitted). Unless there is a good reason for a contrary interpretation, § 1327(b) should be interpreted in the same way. *Id.* (citations omitted).

Accordingly, the Court holds that the bankruptcy estate no longer has an interest in the residence that they seek to be valued. The IRS's secured portion of its claim was modified by § 1322(b)(2) upon confirmation of the Plan to the extent it is now being allowed in a definite sum. Under § 506(a), however, the Court has the power to determine the value of the residence for purposes of this matter as of the time of confirmation. There is nothing in the Code, Rules, or controlling case law which precludes the Court from now performing a § 506(a) valuation as of the date of confirmation in 1993.[14] Thus, the Court holds that the secured component of the IRS's claim equals $9,160.00, the total of the equity in the residence, plus the Debtors' personal property at the time of confirmation.

#### C. *Does the Debtors' confirmed Plan prevent them from reclassifying the IRS's claim?*

The IRS further argues that the Debtors cannot reclassify or lien strip its claim mid-

---

**13.** Section 1327(b) provides, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b).

**14.** Bankruptcy courts are frequently called upon to make valuation determinations of property in

esse or transferred at other previous times. Avoidance actions under 11 U.S.C. §§ 522, 545, 547, and 548, for example, frequently involve disputed valuation determinations of property at a time prior to trial, and at a time when the bankruptcy estate did not exist.

way through the confirmed Plan which made no specific provisions expressing such intent of the Debtors. The IRS contends that after payment of $22,859.00 in scheduled arrears due on the mortgage claim of Source One, the Plan provided that "[a]ll other secured creditors shall be paid in full with post petition interest...." The Debtors argue that this quoted language contained in paragraph 2(b)(4) of their Plan is a subsection of paragraph 2(b) which provides only for holders of "allowed" secured claims. The Debtors maintain that when their Plan provided that all other secured creditors shall be paid in full, those words indicated that the holders of "allowed" secured claims will be paid in full only to the extent their claims are "allowed" and secured. The Debtors continue that the IRS filed its proof of claim only after confirmation of their Plan. Thus, as the argument goes, the IRS's claim was not deemed "allowed" under § 502(a) at the time of confirmation.

 Once confirmed, creditors must look to the plan to determine the treatment of their claims. In essence, a confirmed Chapter 13 plan constitutes a contract between debtors and their creditors. *See Ross,* 162 B.R. at 789–90 (citation omitted). Further, a debtor cannot change the basic structure of a confirmed plan through claim reclassification mid-way through completion. *In re Weissman,* 126 B.R. 889, 893 (Bankr. N.D.Ill.1991) (citations omitted). Because the Debtors' Plan did not specifically propose set payments to the IRS or definite amounts for the respective secured, priority unsecured, and general unsecured portions of its claim, nothing in the Plan or confirmation order bars the Court from making that determination at this point in time.

Based upon the plain and unambiguous language of the Plan that "[a]ll other secured creditors shall be paid in full with post-petition interest at the nondefault contract rate...." the Court holds that the IRS should receive the full amount of its allowed secured portion and priority unsecured portion of its claim. On the limited record before the Court, lacking evidence of how much the IRS has been paid by the Chapter 13 Standing Trustee, the Court is unable to determine whether the Debtors have completely consummated their Plan vis a vis the IRS. Under *Escobedo,* 28 F.3d at 35, until they have fully paid the IRS's now allowed secured claim of $9,160.00, plus $33,905.16 of its allowed unsecured priority claim, and until all other allowed unsecured priority claims, if any, have been paid in full, the Debtors are not eligible for a Chapter 13 discharge. They may have to move under 11 U.S.C. § 1329 to amend their Plan and extend its term to pay in full these elements of the IRS's claim along with 100% of the allowed secured and unsecured priority claims of other creditors. The structure of the confirmed Plan is not at all being changed by the claim objection and adversary proceeding at bar. Rather, only the specific amounts of the various components of the IRS's claim are being determined.

## V. CONCLUSION

For the foregoing reasons, the Court hereby denies the motion of the IRS to dismiss the Debtors' complaint and its companion motion attacking the Debtors' claim objection. The Court sustains, in part, the Debtors' objection to the IRS's claim. Pursuant to 11 U.S.C. §§ 502(b) and 506(a) the Court holds that the allowed secured claim of the IRS as of the time of confirmation was $9,160.00; its allowed unsecured priority portion totals $33,905.16; and its allowed general unsecured portion totals $15,542.50. To the extent the IRS's recorded tax liens exceed the amount of its secured claim allowed hereby, such liens are modified and avoided as to property of the estate and the Debtors pursuant to 11 U.S.C. § 1322(b)(2).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.