**In re Michael & Lynette ADAMS, Debtors.**

**No. 99–B–04507.**

United States Bankruptcy Court,
· N.D. Illinois,
Eastern Division.

Dec. 4, 2001.

Erik A. Martin, Erik A. Martin & Associates, Chicago, IL, for Plaintiff.

Sherman & Sherman, Chicago, IL, for Defendant.

Tom Vaughn, trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON Debtors' "MOTION TO DISALLOW SECURED CLAIM" FILED BY THE FORD MOTION CO.

JACK B. SCHMETTERER,
Bankruptcy Judge.

This case was filed under Chapter 13 of the Bankruptcy Code by Debtors' Michael and Lynette Adams ("Debtors") to "disallow" the secured claims of Ford Motor Credit Company ("Ford") ("Motion"). Those claims were filed after Debtors' Chapter 13 Plan (the "Plan") was confirmed. Debtors argue that Ford's secured claims should be "disallowed" because two vehicles constituting collateral

securing that claim were repossessed and sold by Ford after Debtors' Plan was confirmed, and ask that Ford's remaining claims as yet unpaid be allowed only as unsecured claims. For reasons set forth below, that Motion has been treated under 11 U.S.C. § 506(a) as one to value collateral at zero, and also to reconsider under § 502(j) the balances now due on the claims after the repossessed vehicles were sold by Ford and the Trustee made payments on those claims. However, no grounds have been shown for disallowance under 11 U.S.C. § 502(b), and Plaintiff's Motion for disallowance will be denied.

The relief specified by Debtors is disallowance of the Ford secured claim asserted by it as to a Mercury auto and allowance of an unsecured claim for the remaining debt after credits from sale proceeds and Trustee payments. The Motion does not specify an attack on the secured claim as to the other vehicle, yet it alleges Ford's sale of both vehicles and was read as applying to both claims. Debtors contend that Ford no longer has secured claims because its collateral was repossessed and sold.

Since the Motion became a contested proceeding under Rule 9014 Fed.R.Bankr. P., a final date was scheduled to hear any evidence to be offered and to determine through evidence whether the repossessed vehicles were in fact sold by Ford, and also to determine the reduced amount of remaining debts due on Ford's claims after payments by the Chapter 13 Trustee and receipt of sale proceeds. The parties filed their Stipulation of Facts covering sales of the repossessed autos, and then rested. Since no evidence was offered concerning Trustee payments to Ford, the trial was reopened for the parties to offer such evidence. The disputing parties did not do so, but the Chapter 13 Trustee did and then all rested again. Now, therefore, the Court now makes and enters the following final Findings of Fact and Conclusions of Law.

The prevailing Debtors' counsel was ordered to tender a final judgment order in accord with reasoning in an earlier opinion herein, but did not do so; therefore, the Court did not have the benefit of their input when preparing the final judgment order being separately entered this date.

## FINDINGS OF FACT

### *Undisputed Facts of Record*

Debtors filed a Chapter 13 petition on February 11, 1999. As of that filing date they were owners of a 1995 Ford Mustang and 1996 Mercury Villager (together, the "vehicles"). Ford held first liens on those vehicles when the bankruptcy was filed. Each vehicle was scheduled by Debtors as exempt.

Debtors' Chapter 13 Plan provided for payments by them to the Chapter 13 Trustee of $1,187 per month for up to 60 months. Secured creditors were to "be paid 100% of allowed claims," while unsecured creditors were to be paid 10%. Ford was scheduled as a secured creditor (secured as to a $13,000 asserted value for the Mercury, unsecured as to $12,194; secured as to a $9,690 asserted value for the Mustang, unsecured as to $9,664), though it was not named or otherwise identified in the Plan. But the Plan did not incorporate Debtors' schedules by reference, and Ford was not mentioned by name in the Plan.

The Plan was confirmed on June 3, 1999. Prior to confirmation, Ford had not filed a claim. However, on October 7, 1999, it filed two post-confirmation proofs of claim, one asserting a secured claim of $18,713.66 and an unsecured claim of $3,335.49 on the Mercury, and another claiming the Mustang as secured for $12,081.37 and unsecured for $5,457.94. The Chapter 13

Trustee began payments to Ford Credit under the confirmed Plan after those claims were filed. In May 2000 an Agreed Order was entered herein as to the two subject vehicles, conditioning continuation of the automatic stay under 11 U.S.C. § 362 on continued payments by Debtors to the Chapter 13 Trustee and maintenance of auto insurance coverage.

Subsequent to that Agreed Order, and pursuant thereto, the stay was modified and Ford repossessed and sold the two vehicles. Debtors have filed nothing that casts any doubt or raises any objection to the total dollar amounts claimed by Ford to be due. Debtors' current Motion objects to Ford's secured claims contending that they should now be deemed unsecured because those claims are no longer secured by collateral, and that the amounts due on each should be reduced by the sale proceeds and Trustee payments to date. But the Motion seeks "disallowance" of those claims without citing any legal basis under 11 U.S.C. § 502(b) for disallowance.

### Additional Stipulated and Proven Facts

1. On February 11, 1999 Michael & Lynette Adams filed a petition for relief under Chapter 13 of the Bankruptcy Code.

2. When Debtors filed their petition for relief in bankruptcy, they were owners of two motors vehicles, a 1995 Ford Mustang and a 1996 Mercury Villager.

3. When the petition for relief was filed, Ford had a perfected security interest in each of the two aforesaid vehicles.

4. On or about October 7, 1999, after the June 3, 1999 confirmation of Debtors' Plan, Ford filed two separate proof of claims in the Debtors' Chapter 13 case.

5. The claim filed by Ford for the 1996 Mercury Villager asserted a secured claim in the sum of $18,713.66, plus an unsecured claim in the sum of $3,335.49.

6. The claim for the 1995 Ford Mustang was filed in the secured amount of $12,018.37, plus an unsecured amount of $5,457.94.

7. On May 4, 2000 an Agreed Order was entered between Debtors and Ford, providing that if at any time after entry of the Order should Debtors' Plan payments to the Chapter 13 Trustee accrue a default equal to two monthly payments or more, Ford could send notice of such default to the Debtors and their attorney, and if the default was not completely cured within fourteen days of the mailing of the notice, the automatic stay imposed by § 362 of the Bankruptcy Code would be modified without further notice, hearing or order, to allow Ford to exercise its state court rights over its collateral.

8. Subsequent thereto, the debtors payments to the Chapter 13 Trustee accrued a default equal to more than two monthly payments under terms of their confirmed Chapter 13 Plan.

9. On July 26, 2000 counsel for Ford sent a letter to the Debtors and their attorney advising them of the default, thereby triggering the fourteen day cure period under terms of the Agreed Order.

10. The Debtors failed to cure the payment default to the Trustee within fourteen days subsequent to the letter sent on July 26, 2000.

11. On August 18, 2000 counsel for Ford sent a letter to the Debtors and their attorney advising them that they had failed to cure the default, and further advising them that Ford considered the automatic stay imposed by § 362 of the Bankruptcy Code to have been modified pursuant to the Agreed Order entered on May 4, 2000, and that it would proceed accordingly.

12. Thereafter, both vehicles were repossessed by Ford.

13. The 1996 Mercury Villager was sold at auction by Ford for $5,300.00.

14. The 1995 Ford Mustang was sold at auction by Ford for $5,350.00.

15. The Debtors filed the instant Motion seeking to disallow the secured claims previously filed by Ford, such Motion being predicated on facts hereinabove set forth.

### Additional Evidence Presented at Reopened Trial

16. During the course of this bankruptcy case, following confirmation of Debtors' Plan, the Chapter 13 Trustee paid Ford $2,687.85 on its Mustang claim and $4,163.38 on its Mercury claim.

17. After crediting all payments by the Chapter 13 Trustee to Ford and the amounts recovered by it on sale of the two vehicles, the balances now due on its claims herein are as follows: [1]

| | |
|---|---|
| As to the Ford Mustang vehicle | $ 9,501.46 |
| As to the Mercury Villager vehicle | $12,585.77 |

18. For reasons set forth below, the value of each of Ford's secured claims is now zero, and the balances due on each claim are unsecured.

19. Facts set forth in the Conclusions of Law will be deemed as additional Findings of Fact and Conclusions of Law.

## CONCLUSIONS OF LAW

### Jurisdiction and Venue

Subject matter jurisdiction lies under 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2), (B) and (K), and is referred here under Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue is proper under 28 U.S.C. § 1409(a).

### Arguments of the Parties

Debtors brought their pending Motion as one to "disallow" secured claims. Though movants cited no supporting Bankruptcy Code section in their Motion, no basis was shown to disallow either claim under 11 U.S.C. § 502(b), and it appears that the Motion should be analyzed as one to reduce the amounts due under 11 U.S.C. 502(j), and for valuation of collateral under 11 U.S.C. § 506(a).

Ford essentially raises two arguments: (1) that Debtors are precluded from chal-

1.

| Claims | | | Receipts | |
|---|---|---|---|---|
| Mercury claim filed: | $18,713.66 | secured | Sale: | $5,300.00 |
| | 3,335.49 | unsecured | Trustee payments: | 4,163.38 |
| | $22,049.15 | | Total: | $9,463.38 |
| less receipts from sale and trustee: | ($ 9,463.38) | | | |
| **Balance due:** | **$12,585.77** | | | |

| Claims | | | Receipts | |
|---|---|---|---|---|
| Mustang claim filed: | $12,081.37 | secured | Sale: | $5,350.00 |
| | 5,457.94 | unsecured | Trustee payments: | 2,687.85 |
| | $17,539.31 | | Total: | $8,037.85 |
| less receipts from sale and trustee: | ($ 8,037.85) | | | |
| **Balance due:** | **$ 9,501.46** | | | |

lenging the extent of Ford's claim under the doctrine of collateral estoppel based on the Plan confirmation order, and (2) that the relief sought is a disguised Motion to modify the confirmed Plan and should be determined and denied under Code § 1329.

Analysis of the issues here starts with relevant areas of the Bankruptcy Code governing filing of claims, claims allowance, valuation of secured claims, and confirmation and amendment of a Chapter 13 plan.

### Filing and Allowance of Claims

■ A secured creditor does not have to file a claim in a bankruptcy proceeding, and may look to its lien for satisfaction of the debt. *Matter of Tarnow*, 749 F.2d 464, 465 (7th Cir.1984). But if the secured creditor is undersecured and seeks to recover the deficiency through bankruptcy, or seeks a distribution under a confirmed plan, it must file a claim. *In re Strong*, 203 B.R. 105, 112 (Bankr.N.D.Ill.1996). Bankruptcy Rule 3021 requires distributions pursuant to plans to be made after confirmation only to those creditors whose prepetition claims are "allowed". *Id.*

■ Section 501 of the Bankruptcy Code authorizes filing of claims. A properly filed claim constitutes prima facie evidence of the validity and amount of that claim. Fed.R.Bankr.P. 3001(f); *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir.2000). A claim is deemed allowed unless a party in interest objects under § 502(b). 11 U.S.C. 502; *Adair*, 230 F.3d at 894. Section 502(b) lists nine categories of objections that can be made to a claim filed under § 501. 11 U.S.C. 502(b). Once an objection is made, the court must "determine the amount of such claim ... as of the date of the filing of the [bankruptcy] petition ... except to the extent that—(1) such claim is unenforceable against the debtor ... under ... any applicable law...." *Id.* In this case, after the vehicles were sold and the debts partially paid through sales and Trustee payments, those debts are no longer contractually due in the original amounts, and the amounts originally due on the claims in bankruptcy have thereby been reduced.

■ A secured creditor's lien may be avoided to the extent that the claim amount is disallowed under § 502(b). 11 U.S.C. 506(d). Bankruptcy Rules do not fix a time limit for filing an objection to a claim, *Lenior v. GE Capital Corp. (In re Lenior)*, 231 B.R. 662, 671 (Bankr.N.D.Ill. 1999), and an objection to an amount claimed may in the usual cases be filed at any time. *In re Hutchins*, 162 B.R. 1014, 1022 (Bankr.N.D.Ill.1994). Section 502 even provides for reconsideration of an "allowed" claim for cause. 11 U.S.C. § 502(j); *Hutchins*, 162 B.R. at 1022 (a claim may always be reconsidered "according to the equities of the case"). So partial payment of the debts may now be found to have reduced the amounts still due on those debts.

■ A secured claim that is filed pre-confirmation without objection (and is therefore "allowed") and is treated in a subsequently confirmed Chapter 13 Plan cannot later be attacked as to the secured value, *Adair*, 230 F.3d at 894. However, *Adair* did not prohibit later review of the amount of total debt due should partial payment thereof be proved, nor did it deal with claims filed after confirmation.

### Valuation of a Secured Claim

A secured creditor that is undersecured may have its claim that is allowed under § 502 bifurcated under 11 U.S.C. § 506(a). Bifurcation under the latter provision results in division of the claim into a secured claim equal to the value of the collateral and an unsecured claim on the balance of

the allowed claim. This is often referred to as a "strip down" because it reduces the asserted secured part of the creditor's claim. After bifurcation, the secured creditor may object to any Chapter 13 plan which fails to pay 100% of the allowed secured claim, 11 U.S.C. § 1325(a)(5)(B)(ii), and the debtor may pay the unsecured claim on a pro rata basis with other unsecured claims. *Id.* at 1325(a)(4).

Bankruptcy Rule 3012 provides that:

The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

Fed.R.Bankr.P. 3012.

■ While the total amount of a claim filed is presumed valid until attacked, there is no presumption given to the value placed on the collateral by the creditor. *In re Fareed,* 262 B.R. 761, 766 (Bankr. N.D.Ill.2001). *See also In re Simmons,* 765 F.2d 547, 552 (5th Cir.1985) (... [F]iling of a proof of claim is tantamount to filing of a complaint in a civil action); to the same effect *see Fareed,* 262 B.R. at 769 (a pre-confirmation claim is like a complaint as to which some response or objection is needed by or before the confirmation order to avoid a default judgment).

■ A motion for valuation of a security can be made at any time, as there are no time limits for doing so set in § 506(a) or Rule 3012. *In re Lewis,* 875 F.2d 53, 57 (3rd Cir.1989) (debtor could challenge the valuation of secured creditor's claim more than seven months after confirmation). The only limitation on a post-confirmation "strip down" motion under Rule 3012 or valuation under § 506(a) is that the parties are bound by any valuation included in a

confirmed plan where the secured creditor filed a claim pre-confirmation and its asserted collateral value was not challenged before confirmation, *Adair* 230 F.3d at 894, or the confirmed plan itself specifies collateral value. *In re Hudson,* 260 B.R. 421 (Bankr.W.D.Mich.2001).

### *Confirmation and Modification of Chapter 13 Plan*

Various sections of the Bankruptcy Code deal with requirements for a confirmed Chapter 13 Plan including: § 1321(requiring a filed plan), § 1322 (delineating the contents of a plan), and § 1325 (outlining requirements that must be met before a plan can be confirmed).

Failure to object to the confirmation of a Chapter 13 plan is deemed acceptance.... A confirmed Chapter 13 plan is binding on all creditors provided for within the plan.... Creditors must object to confirmation, appear at hearings or otherwise put disputes before the bankruptcy court in order to raise objections. If the creditor fails to do so, the creditor is bound by the Chapter 13 plan.

*Matter of Chappell,* 984 F.2d 775, 782 (7th Cir.1993).

This principle is codified at § 1327 of the Code:

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327(a).

The only modification allowed of a properly confirmed plan is under § 1329(a) of the Bankruptcy Code:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may

be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to

    (1) increase or reduce the amount of the payments on claims of a particular class provided for by the plan;

    (2) extend or reduce the time for such payments;

    (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1)Sections 1322(a), 1322(b), and 1322(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

11 U.S.C. §§ 1329(a)-(b)(1).

■ Debtors cannot use § 1329 to strip down Ford's claim. In briefs they urge an expansive view of § 1329 espoused by minority precedents, but that view was rejected by a panel of the Sixth Circuit in *In re Nolan*, 232 F.3d 528 (6th Cir.2000) (debtor cannot change the confirmed plan under § 1329 so as to modify the status of a secured claim to an unsecured claim). As *Nolan* pointed out, § 1329 only allows a debtor to seek a modification of the amount or timing of specific payments under a confirmed Chapter 13 plan. Debtors cannot use that provision to modify a confirmed plan by surrendering the collateral to a secured creditor and bifurcating that creditor's claim to the present value of collateral. *Nolan*, 232 F.3d at 532. However, *Nolan* did not discuss the possibility of reaching the same result if sought under Code § 502(j) and § 506(a), and that opinion must be read to apply only to the § 1329 issue discussed there.

So Debtors' request for relief against the secured claims can only be considered under 11 U.S.C. § 506(a) and Rule 3012

Fed.R.Bankr.P., and their request for relief to reduce the balance now due on those claims can only be considered under § 502(j).

### Ford's Estoppel Argument

Ford contends that Debtors are estopped under reasoning in *Adair* from challenging and seeking strip down of its secured claim after their plan was confirmed:

Under the doctrine of issue preclusion, an issue may not be litigated if the following conditions are met: (1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action.

*Adair*, at 230 F.3d at 893.

■ Issue preclusion is an affirmative defense, *Id.* at 894, which in this case places a burden on Ford to show facts sufficient to satisfy each element of its defense to the pending Motion.

■ Estoppel by plan confirmation can sometimes result. Creditors cannot challenge payments provided for under confirmed plans or challenge the valuation of collateral fixed by those plans. *Chappell*, 984 F.2d at 782 (secured creditor could not challenge plan payout after confirmation where creditor failed to object prior to confirmation); *Matter of Pence*, 905 F.2d 1107, 1110 (7th Cir.1990) (erroneous valuation of collateral could not be corrected after confirmation of Chapter 13 Plan). *Adair* emphasized that the plan confirmation order has preclusive effect on all issues that were raised or which could have been raised prior to confirmation. *Id.* at 895. That rule certainly applies to cases where creditor's claims are filed pre-

confirmation as in *Adair* and *In re Fareed,* or where the debtor's plan itself sets forth collateral value, *Hudson,* 260 B.R. 421. Here the plan was silent as to collateral value, and creditor's claims were not filed until after the confirmation hearing. Since Ford filed no claim prior to Plan confirmation, and the Debtors therefore had no chance to seek strip down or otherwise object to the unfiled claims before confirmation, they are not precluded by collateral estoppel or otherwise from challenging those claims after confirmation. *Strong,* 203 B.R. at 114.

Ford has not pleaded any facts supporting its contention that Debtors are estopped by the confirmation from litigating post confirmation the valuation of its secured claims that were filed post confirmation. Its assertion "that the Debtors' confirmed plan is res judicata as to all claims determinations and the classification of claims" (Answer to Debtors' Motion, ¶ 11) states no basis to meet the standard articulated in *Adair.*

Indeed, Ford obviously cannot show that valuation of its claim was litigated as part of Debtors' Plan confirmation proceeding when its claim was not even filed until after the confirmation order was entered and Debtor did not assert collateral values as terms of the plan. Nonetheless, Ford argues several cases in an effort to show that Debtors are estopped from challenging its claim filed after the Chapter 13 Plan has been confirmed, citing *In re Cooper,* 167 B.R. 889 (Bankr.E.D.Ark.1994); *In re Butler,* 174 B.R. 44 (Bankr.M.D.N.C. 1994); *In re Banks,* 161 B.R. 375 (Bankr. S.D.Miss.1993); *In re Algee,* 142 B.R. 576 (Bankr.D.C.1992).

Debtors distinguish those cases because "the majority of [Ford's] case law involves cases where the value of the collateral has diminished and the Debtor is moving to surrender the property and to object to the secured claim." It is true that *Banks* and *Cooper* involved attempts by debtors to surrender devalued collateral. However, that distinction does not dispose of the issue here. The manner in which collateral is extinguished has little bearing on the analysis of a debtor's substantive rights under § 506(a). The important legal distinction from the cases cited by Ford is that each (with exception of *Algee* which is not followed for reasons discussed below) involved a secured creditor that filed its proof of claim prior to confirmation of the debtors' Chapter 13 plan. That distinction is legally significant because a creditor can invoke collateral estoppel against a debtor only where the fact issue of claim valuation was previously litigated as part of the confirmation of a plan under Chapter 13. *Adair,* 230 F.3d at 895.

Where a debtor has no pre-confirmation opportunity to litigate the extent of a creditor's allowed secured claim under § 506(a), there is no bar to such litigation being brought after confirmation of debtor's Chapter 13 plan. *See In re Lewis,* 875 F.2d at 57 (rejecting creditor's argument that debtor's motion to bifurcate creditor's secured claim was untimely because it was filed more than seven months after confirmation) and *In re Strong,* 203 B.R. at 114. In both *Strong* and *Lewis,* the secured creditors failed to file any proof of claim prior to confirmation of the debtors' Chapter 13 Plan. Debtors sought after confirmation to bifurcate the secured creditor's claim under § 506(a) and creditors objected that debtors' motion was barred under the doctrine of res judicata, but their objections were overruled. *In re Lewis,* 875 F.2d at 54–58; *In re Strong,* 203 B.R. at 111–14.

If the Debtors' Plan here had fixed or determined the value of collateral, confirmation would have had a collateral estop-

pel effect. But here the Plan merely stated that the secured creditors were to be paid "100% of allowed claims." Ford could not have "allowed" claims until its claims were filed, and the Plan terms in this case left open the value of security for future determination.

It was recently held by Judge Wedoff in this District that a Chapter 13 confirmed plan incorporated the value of a secured claim asserted prior to confirmation in a properly filed claim. *In re Fareed*, 262 B.R. at 770–71. Here, since no secured claim was on file when the Plan in this case was confirmed, there was no such incorporation. Since Ford failed to object to Debtors' confirmed Plan which did not value its secured claim and failed to file its claims containing its own valuations until after confirmation, there is no factual basis for its estoppel argument.

A contrary ruling would allow secured creditors to delay the filing of claims in order to bar claim challenges or any hearing at all on secured value. Such tactics, whether deliberate or fortuitous, would seriously threaten the substantive rights of debtors under § 502(b) and § 506(a). This is the flip side of the concern expressed by the *Adair* court that, unless precluded by collateral estoppel from bringing claim objections after plan confirmation, debtors might deliberately delay filing objections to claims until after confirmation in order to undermine the finality of bankruptcy. *Adair*, 230 F.3d at 895 Fn. 6–7.

The legal interpretation espoused by Ford would give secured creditors a windfall for failing to participate in the bankruptcy proceedings before entry of the confirmation order. The statutory language and context do not support that result, and for reasons discussed it is not reasonable or appropriate to follow the contrary conclusion reached in *In re Algee*, 142 B.R. 576 (Bankr.D.C.1992) (court re-

fused to allow debtor to challenge the extent of creditor's secured claim after confirmation even though creditor failed to file a proof of claim and was primarily an unsecured creditor).

## CONCLUSION

Once Ford sold the repossessed vehicles, it recovered the secured value thereof from the marketplace. By seeking as it now does to have the deficiencies on the rest of its filed secured claims paid 100% through the Plan as secured debt, it attempts to recover the secured values a second time, and this time to recover values inflated above what the market produced. Moreover, if its argument were accepted, then it and other creditors could block any debtor from ever exercising rights under § 506(a) to strip down the secured claim by the simple expedient of not filing a claim prior to confirmation. A creditor that comes late to the bankruptcy case can hardly assert the same rights as one who files a pre-confirmation claim that is not objected to by the debtors.

For the foregoing reasons, Debtors' Motion to disallow Ford's secured claims under 11 U.S.C. § 502(b) is denied, but treated under 11 U.S.C. § 506(a) as a Motion to value the secured claims at zero is allowed. The Motion is allowed by separate Judgment Order under that provision so as to reduce to zero the secured claims as to each car; since the security was sold, and the claims of Ford are no longer secured. Based on evidence received as to such sales and the proceeds thereof, as well as payments by the Trustee to Ford on its claims, the amounts of Ford's remaining unsecured claims can now be reconsidered and determined under § 502(j). The unsecured balance due on the Ford vehicle loan is now $9,501.46 and the unsecured balance due on the Mercury vehicle loan is now $12.585.77.

A final Judgment Order in accord with the foregoing will be separately entered, pursuant to which the Trustee payments on the unsecured claims will henceforth be made and applied.