In re Raymond JOHNSON, Jr.,
Annette Johnson, Debtors.

Davis–McGraw, Inc., Creditor,

v.

Raymond Johnson, Jr., Annette
Johnson, Debtors.

No. 97–13584.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

Dec. 23, 1999.

## ORDER

JOHN S. DALIS, Chief Judge.

Raymond Johnson, Jr., and Annette Johnson ("the Johnsons") seek to modify their confirmed Chapter 13 plan to surrender collateral in satisfaction of the secured claim of Davis–McGraw, Inc. ("Davis–McGraw") and to allow any resulting deficiency following sale of the collateral as an unsecured claim. Davis–McGraw objects asserting that the dollar amount of their allowed secured claim was determined at confirmation, and cannot be satisfied nor altered by surrendering collateral which has since devalued. In addition, Davis–McGraw seeks attorney's fees resulting from the defense of this matter. The Johnsons' plan modification is approved. Davis–McGraw may by motion seek allowance of an administrative expense claim in the event that sale of the collateral fails to satisfy the balance remaining due on its previously allowed secured claim.

The facts relevant to this proceeding are as follows. The Johnsons' Chapter 13 plan as amended was confirmed on June 29, 1998. The plan valued the collateral securing the Johnsons' debt to Davis–McGraw at $1,000.00, and upon confirmation Davis–McGraw's claim was allowed and bifurcated into two claims, a secured claim for $1,000.00 plus 12% interest and an unsecured claim for $502.47. On February 16, 1999, the Johnsons filed a "Modification to Chapter 13 Plan After Confirmation," proposing to surrender collateral and reduce payments. At hearing Raymond Johnson (debtor) testified to a change in circumstances which necessitated the modification, i.e. Annette Johnson (co-debtor) was no longer working, they were living with Annette Johnson's mother, and they could no longer afford the required plan payments.

Three issues are raised: whether the Johnsons may surrender collateral to satisfy Davis–McGraw's secured claim; whether any deficiency balance due on the claim can be treated as unsecured; and whether Davis–McGraw can seek an administrative

J. Benjamin Kay, III, Attorney at Law, Augusta, for Creditor.

Angela Carter McElroy, Attorney at Law, Augusta, for Debtors.

expense claim for the deficiency. Before addressing these questions, it is necessary to review the treatment of secured claims in the original Chapter 13 plan as well as the meaning of "foreclosure" and "replacement" values.

In *Associates Commercial Corp. v. Rash*, the Supreme Court distinguished between replacement and foreclosure values, and held that replacement value sets the amount of the secured claim in a Chapter 13 plan where the debtor proposes to retain the collateral securing the claim. 520 U.S. 953, 117 S.Ct. 1879, 138 L.E.2d 148 (1997). *See also, Johnson v. General Motors Acceptance Corp.*, 165 B.R. 524 (S.D.Ga.1994) (secured claim set at "fair market value,"). Replacement value is the price that a willing buyer in the debtor's situation would pay to obtain comparable property from a willing seller. *Rash*, 520 U.S. 953, 117 S.Ct. at 1882. Foreclosure value is the amount a buyer will pay when the seller has no choice but to sell. *Id.*

At the outset of a chapter 13 case, a debtor has three options regarding secured debt. 11 U.S.C. § 1325(a)(5) [1]. First, the debtor and creditor may agree on terms. 11 U.S.C. § 1325(a)(5)(A). Second, the debtor may surrender the collateral to the creditor. 11 U.S.C. § 1325(a)(5)(C). The creditor will then sell the collateral, by definition receiving the *foreclosure* value. The cash realized will be subtracted from the debt and the difference allowed as an unsecured claim

in the debtor's chapter 13 plan. Third, as here, the debtor may retain the collateral. His chapter 13 plan will include a secured claim for the value of the collateral as of the date of filing and an unsecured claim for any difference between the amount owed the creditor and the allowed secured claim. 11 U.S.C. § 506(a) [2], § 1325(a)(5)(B). The secured claim is for the *replacement* value of the collateral. *Rash*, 520 U.S. 953, 117 S.Ct. at 1886. Replacement value, not foreclosure value, is used because, "[i]f a debtor keeps the property and continues to use it, the creditor obtains at once neither the property nor its value and is exposed to double risks: The debtor may again default and the property may deteriorate from extended use." *Id.* 520 U.S. 953, 117 S.Ct. at 1885.

Returning to the issues posed by the facts of this case, the first issue is whether a Chapter 13 debtor can surrender collateral *after confirmation* of a chapter 13 plan. Courts are in agreement that collateral may be surrendered to pay down a secured claim after the chapter 13 plan has been confirmed, although they are not in agreement on the subsequent treatment of any unpaid balance of the secured claim. *See In re Rimmer*, 143 B.R. 871, 875 (Bkrtcy.W.D.Tenn.1992) (collateral may be surrendered, and the unpaid remainder of the secured claim may be reclassified as an unsecured claim); *In re Coleman*, 231 B.R. 397, 400 (Bkrtcy.S.D.Ga.1999) (collateral

---

1. 11 U.S.C. § 1325(a)(5) provides

> (a) Except as provided in subsection (b), the court shall confirm a plan if—. . .
> (5) with respect to each allowed secured claim provided for by the plan—
> (A) the holder of such claim has accepted the plan,
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
> (C) the debtor surrenders the property securing such claim to such holder; and
> . . . .

2. 11 U.S.C. § 506(a) provides:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

may be surrendered, but the unpaid remainder of the secured claim must continue to have secured status).

■ The second issue is whether the secured claim remaining after the post-confirmation surrender of collateral, the deficiency, can be reconsidered. This deficiency is the balance of the secured claim that was not paid by the debtor's plan payments and by the net proceeds from the sale of the collateral. Selling the collateral realizes only its foreclosure value (the amount a buyer will pay when the seller is forced to sell). This is generally less than the present amount of the creditor's secured claim because the secured claim was originally set at the higher replacement value; and, the collateral has lost more value, *as contemplated by replacement value,* through time and use than has been compensated for by the debtor's plan payments.

Some courts hold that the post-surrender chapter 13 plan should continue to treat the deficiency as a secured claim.[3] These courts reason that the status of the claim as secured is res judicata, and that reclassifying a secured claim as unsecured would permit the debtor to unfairly shift the burden of post-confirmation depreciation to the creditor. Other courts do allow the debtor to reclassify a deficiency as an unsecured claim.[4] These courts hold that Bankruptcy Code § 1329[5] permits reclas-

---

3. *Matter of Coleman,* recently issued in this District, held that Section 1329(a)(1) permits post-confirmation modification only to alter the amount of specific periodic payments. 231 B.R. 397, 399 (Bkrtcy.S.D.Ga.1999). *Coleman* held that a confirmed plan binds both the debtor and the creditors, and therefore neither a secured claim nor any portion of it can be reclassified as anything else. *Id.* at 401. Section 1329(a)(1) was interpreted to prevent a debtor from shifting the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has use for it. *Id.* at 400.

  *Chrysler Financial Corp. v. Nolan* agreed with *Coleman* that Section 1329 does not authorize a debtor to shift the burden of collateral depreciation to the creditor by surrendering collateral and reclassifying any deficiency after confirmation of a plan. 234 B.R. 390, 397 (M.D.Tenn.1999). *Nolan* also provides an overview of some of the often-cited cases on this issue.

  *In re Meeks* stated that § 1327(a) defines the amount of a secured claim as res judicata, and § 1325(a)(5)(B)(ii) requires full payment of that amount. 237 B.R. 856, 858–859 (Bkrtcy.M.D.Fla.1999). *Meeks* then held that sections 1329(a)(1) and (a)(3) permit a debtor to change the rate at which a claim is paid by surrendering the collateral. However, modification of payment amount cannot alter the total allowed amount of the secured claim or eliminate the requirement of § 1325(a)(5) that the claim be paid in full. Reclassification of any remaining amount due as an unsecured claim would change the allowed amount of the secured claim. Therefore, the deficiency between the amount of the secured claim and the amount realized by sale of the collateral must continue to be classified as and treated as a secured claim. 237 B.R. 856 (Bkrtcy. M.D.Fla.1999).

4. *In re Jock* held that a debtor can modify a confirmed chapter 13 plan to surrender collateral to a secured claim holder and pay any deficiency as an unsecured claim. 95 B.R. 75, 76 (Bkrtcy.M.D.Tenn.1989). *Jock* reasoned that § 1329 incorporates § 1325, so § 1329 post-confirmation modification includes § 1325 surrender of collateral in satisfaction of a secured claim. *Id.* at 78. If surrender of collateral post-confirmation fails to fully satisfy a secured claim, then any resulting deficiency must be unsecured. *Id.*

  *In re Rimmer* set out the procedure required for a debtor to modify a confirmed plan by (1) surrendering collateral and (2) reclassifying a portion of the secured debt by adding a deficiency to the unsecured class. 143 B.R. 871 (Bkrtcy.W.D.Tenn.1992). The *Rimmer* court agreed with *Jock,* that § 1329(a)(1) provided the authority to modify a plan in this manner. *Id.* at 875.

5. 11 U.S.C. § 1329 provides
  (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
    (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
    (2) extend or reduce the time for such payments; or
    (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take

sification and that, just as at confirmation, debt that is not covered by the value of the collateral should be treated as unsecured.

■ If a deficiency remains after the sale of the Johnsons' collateral, it is unsecured. I agree with the *Coleman* analysis that § 1329 does not permit a post-confirmation *reclassification* of a secured claim. However, Section 1329 deals with *plan* modification, not claim allowance. Section 502 provides for the allowance or disallowance of claims. In this instance § 502(j) controls.

Section 502(j) provides:

(j) A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

After surrender of collateral, the deficiency portion of the claim is no longer actually secured. A claim simply cannot be secured when nothing secures it. Any deficiency debt is therefore by definition unsecured. That reality can and should be reflected in the allowance of claims in the bankruptcy case. Otherwise, the plan is not in accord with the Bankruptcy Code requirement that the plan must provide the same treatment for each claim within a particular class. 11 U.S.C. § 1329(b)(1), § 1322(a)(3) [6]. The Johnson's confirmed Chapter 13 plan, like many Chapter 13 plans, classifies all unsecured claims together. The unsecured deficiency claim must be treated as all other unsecured claims allowed by the plan. To allow the claim as secured fails to treat all claims equally within a particular class. Section 502(j) is available to redress that inequity.

Section 502(j) considers the good faith of both the debtor and the affected creditor. "A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j). Furthermore, a modified plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. §§ 1329(b), 1325(a)(3) [7]. Thus, the deficiency amount of the allowed secured claim may be treated as an unsecured claim *if* the request is in good faith and leads to an equitable result. 11 U.S.C. §§ 502(j), 1329(b), 1325(a)(3). As an example, treatment of the deficiency amount as unsecured was denied in *In re Butler* because the debtors showed a lack of good faith. 174 B.R. 44, 48 (Bkrtcy. M.D.N.C.1994). The debtors failed to maintain automobile insurance as required

account of any payment of such claim other than under the plan.

(b)(1) Section 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for

cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

**6.** 11 U.S.C. § 1322(a)(3) provides

(a) The plan shall—...

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

**7.** 11 U.S.C. § 1325(a)(3) provides

(a) Except as provided in subsection (b), the court shall confirm a plan if—...

(3) the plan is proposed in good faith and not by any means forbidden by law....

by their plan, drove their uninsured van, and were in an accident. *Id.* at 46. The court allowed the badly damaged van to be sold and the proceeds applied to the secured claim. *Id.* at 49. However, the court refused to allow the deficiency to be reclassified as an unsecured claim. *Id.* The debtors' failure to maintain insurance and operation of the vehicle without insurance constituted a lack of good faith in the fulfillment of their original plan requirements, which barred the proposed modification. *Id.*

■ Here, Davis–McGraw alleged that the Johnsons were not proceeding in good faith in the proposed modification to their Chapter 13 plan after confirmation because they sought to surrender the collateral after many months of use. The Johnsons, however, testified that they wished to surrender the collateral because Annette Johnson was no longer working, they were living with her mother and they could no longer afford their current plan payment. The Bankruptcy Code allows the debtor to use collateral and subsequently surrender it. 11 U.S.C. § 1329(a)(3). Acting in accordance with the Bankruptcy Code, under the circumstances established by the debtor's testimony, they are not acting in bad faith. Since no bad faith is indicated, reconsideration of the claim is appropriate.

Reconsideration of the remaining claim allowing it as unsecured, will harm the creditor's position. A secured claim is repaid in full with interest to provide present value as the claim is paid over time. 11 U.S.C. § 1325(a)(5)(B)(ii). An unsecured claim is repaid according to the percentage established for that class of unsecured claims under the confirmed plan. If unsecured claims are paid at less than 100%, reconsideration of a formerly secured claim, allowing it as unsecured means that the creditor will be paid less money.

■ Given that the deficiency is now an unsecured debt, the third issue is the creditor's recourse. The formerly-secured creditor's recourse is to seek allowance of a priority claim for an administrative expense caused by the failure of the plan adequately to protect the creditor's interest.

A secured claim in a confirmed chapter 13 plan is for an amount equal to the value of the collateral. 11 U.S.C. § 506(a). Each secured claim is, in theory, adequately protected because the payment of the debt through the plan keeps pace with the depreciation of the collateral. However, the existence of a deficiency amount demonstrates that the creditor's claim was *not* adequately protected. The collateral did not realize the dollar amount of the secured claim. The plan did not adequately protect the creditor. Therefore, the creditor may seek allowance of a claim for an administrative expense caused by this failure of adequate protection. 11 U.S.C. § 503(b); 2 Norton Bankr.L. and Prac. 2D, § 42:13 p. 42–68 (1997–1999) (use of word "including" in preamble of § 503(b) means that list of administrative expenses is not exclusive; citing 11 U.S.C. § 102(3) ("including" is constructed as not limiting)) See also, *In re Carpet Center Leasing Co., Inc.,* 991 F.2d 682 (11th Cir., 1993), cert. denied 510 U.S. 1118, 114 S.Ct. 1069, 127 L.Ed.2d 388 (1994). Payment of such an administrative expense has priority over unsecured claims and is paid in full. 11 U.S.C. § 507(a)(1) & (b) [8].

**8.** 11 U.S.C. § 507(a)(1) & (b) provides
(a) The following expenses and claims have priority in the following order:
(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28....
(b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

However, a related issue arises—what dollar amount can the creditor claim as an administrative expense? Foreclosure value, not replacement value, should be the basis of the super priority administrative expense claim. The debtor's payments on the secured claim and the cash received from the post-confirmation sale of the collateral should both be subtracted from that foreclosure value. The resulting dollar amount is the creditor's allowable super priority administrative expense for failure of adequate protection.

Using the foreclosure value ensures the same result to both debtor and creditor, whether the collateral is surrendered pre- or post-confirmation. If the debtor had originally chosen to surrender the collateral, foreclosure value would have been realized. Post-confirmation surrender of collateral should not realize to the creditor more money than pre-confirmation surrender. The administrative expense, therefore, should be based on the foreclosure value that the creditor would have received if the collateral had been surrendered at the outset of the case.

When the super priority administrative expense (based on foreclosure value) is less than the deficiency amount (based on replacement value), the difference between the foreclosure value and the replacement value will remain an unsecured claim. The creditor's total general unsecured claim will be the same no matter when the collateral is surrendered.

By example, assume that a debtor owes the creditor $100. When the debtor files a chapter 13 bankruptcy, in January, the collateral's replacement value is $75 and its foreclosure value is $40.

If the debtor decides at the outset to surrender the collateral, then the creditor sells the collateral for $40, (foreclosure value) and is allowed a $60 unsecured claim under the chapter 13 plan.

If the debtor keeps the collateral, then the creditor is allowed a secured claim for the collateral's replacement value, $75, and an unsecured claim for the difference, $25.

Additional assumptions are needed to illustrate what happens where, as here, the debtor modifies the plan post confirmation to surrender the collateral. In January, the debtor's initial confirmed plan provides to retain the collateral and a $75 secured claim and a $25 unsecured claim are allowed. Under the plan, the creditor receives $2.00 per month on the allowed secured claim, plus interest. In June, the debtor surrenders the collateral, and the creditor sells it for $15 (the foreclosure value dropped from $40 to $15 over the five months the debtor held the collateral). The sale price, $15, and the total of principal payments on the allowed secured claim of $10.00 ($2.00 p/mo. × 5 mos. of payments received) are deducted from the secured $75.00 claim, resulting in a $50 deficiency unsecured claim. The creditor may seek allowance of an administrative expense super priority claim for the failure of adequate protection. The administrative expense claim is $15, the difference between the original $40 foreclosure value and the $15 (June) foreclosure value less the principal plan payments of $10.00 paid. This administrative expense of $15 is subtracted from the deficiency unsecured claim of $50, reducing the deficiency unsecured claim to $35. The creditor now has allowed unsecured claims totaling $60, the same as if the collateral had been surrendered at the outset of the bankruptcy case. The creditor has received cash for the collateral and an administrative expense which together are the equivalent of receiving the collateral at the outset of the case. ($15.00 cash at foreclosure, $10.00 principal payments under the plan plus $15.00 administrative expense claim totaling $40.00). Both the creditor and the debtor are in the same position, no matter when in the course of the bankruptcy case the collateral is surrendered.

Allowing the creditor an administrative expense claim for failure of adequate protection, based on the original foreclosure value, is fair to both debtor and creditor. The debtor can surrender collateral to reduce the claim and successfully complete

the chapter 13 plan. The creditor neither loses nor gains, because he receives the same cash return (from sale of collateral, principal payments under the plan with interest and the super priority administrative expense claim) and the same unsecured claim as would have been allowed had the collateral been surrendered at the outset of the plan. The administrative expense claim merely compensates the creditor for the unpaid devaluation of the collateral during the time that the debtor had the use of it. The conflicting concerns of the debtor and the creditor are balanced, according to the policy of the Bankruptcy Code, *See Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

It is, therefore, ORDERED that the objection of Davis–McGraw, Inc. to the modified plan of Raymond Johnson, Jr., and Annette Johnson, to surrender collateral in satisfaction of the allowed secured claim is overruled. The modification is approved Davis–McGraw, Inc. must, following orderly liquidation of its collateral according to applicable state law, reduce the amount of the previously allowed secured claim by the net amount of the foreclosure proceeds which resulting deficiency claim will be treated as unsecured pursuant 11 U.S.C. § 502(j). Davis–McGraw, Inc. by motion may seek allowance of an administrative expense claim for any failure of adequate protection as outlined above.

It is further ORDERED that Davis–McGraw, Inc.'s request for an award of attorney's fees is denied.