**In re Robert C. BYRD, Debtor.**

**Bank of America, Movant,**

**v.**

**Robert C. Byrd, Respondent.**

**No. 99–54163–JDW.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

May 1, 2000.

**450**

Ronald A. Levine, Atlanta, GA, for Movant.

Homer M. Scarborough, Jr., Macon, GA, for Respondent.

### MEMORANDUM OPINION

JAMES D. WALKER, Bankruptcy Judge.

This matter comes before the Court on Objection to Confirmation filed by Bank of America ("Creditor"). Creditor objects to confirmation of the Chapter 13 plan proposed by Robert C. Byrd ("Debtor"). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L) (2000). After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor filed for protection under Chapter 13 on October 28, 1999, owing Creditor $18,113.79, a debt secured by Debtor's 1996 Sierra pickup truck (the "pickup"). In his Chapter 13 plan, Debtor proposes to retain and use the pickup pursuant to Sections 363(b) and 1303, and he values it at $11,000.00 for the purpose of determining Creditor's secured status pursuant to Section 506(a). No unsecured claims will receive any dividend under the plan.

Creditor objects to the plan because the pickup's petition date replacement value was $18,137.00, an amount sufficient to afford Creditor secured status for the entire amount of its claim. Parties have not indicated the pickup's petition date liquidation value, but it was presumably less than $17,325.00, the pickup's replacement value on the date of the confirmation hearing.

As is often the case with automobiles, the pickup's value appears to be inherently depreciable.[1] Even if Debtor properly maintains the pickup, its value in both the replacement and liquidation markets will decline between the petition and the confirmation dates. Creditor has not requested relief from the automatic stay for lack of adequate protection pursuant to Section 362(d)(1), nor has it requested that the

---

1. The term "inherently depreciable" refers to the type of collateral where the market value inevitably depreciates over time. Delay in liquidating "inherently depreciable" collateral inevitably results in loss to one who has recourse only to its lien on such property. While automobiles are examples of such property, other types of property, such as household furniture, would fit this definition, as well, absent evidence to the contrary. Real estate would be an example of property that does not fit the definition of "inherently depreciable" collateral, absent evidence to the contrary.

Court condition Debtor's continued use of the pickup, pursuant to Section 363(b) to adequately protect its interest in the pickup.

### Conclusions of Law

■ Creditor's objection raises the issue as to whether its secured status should be determined, pursuant to Section 506(a) for the purposes of Section 1325(a)(5)(B), based on the pickup's petition date value or its confirmation date value. Neither the Eleventh Circuit nor the United States Supreme Court has directly addressed this issue. The bankruptcy and district courts have not reached a consensus as to the correct answer.

In *In re Kennedy*, 177 B.R. 967 (Bankr. S.D.Ala.1995), the court reviewed the theories for timing determination of secured status for the purpose of Section 1325(a)(B), and decided that the determination should be based on collateral's confirmation date value. Such timing, the court argued, best accounts for the interplay of the Code's various sections. *In re Kennedy*, 177 B.R. at 971. *In re Kennedy* appears to reflect the majority view. However, the argument based on judicial efficiency for fixing secured status based on collateral's petition date value has merit, at least within the context of Chapter 13 proceedings, and it will be considered when determining Creditor's secured status.

I. *Multiple Valuations Approach to Determination of Secured Status Based on Value as of Confirmation Date*

The argument for determining a creditor's secured status as to collateral's confirmation date value, also called the "multiple valuations" approach, appears to be the view of the majority of courts that have considered this question. According to courts taking the multiple valuations approach, secured status varies depending on the purpose for which secured status is determined. "Establishing equity, allow-

ing claims, adequate protection, Chapter 13 eligibility, and plan confirmation" are some contexts in which such variable determinations might need to be made pursuant to Section 506(a). *In re Cason*, 190 B.R. 917, 924 (Bankr.N.D.Ala.1995); *see also In re Delta Resources, Inc.*, 54 F.3d 722, 729–30 (11th Cir.1995) (adequate protection determined early in case, secured claims determined later); *but see In re Beard*, 108 B.R. 322, 323–24 (Bankr. N.D.Ala.1989) (holding it illogical for secured status to vary as the purpose for determining secured status varies).

The argument for multiple valuations is based on a construction of Section 506(a) that recognizes the conflict that would be created between Section 506(a) and the Code's adequate protection provisions if a creditor's secured status were fixed for confirmation purposes as of the petition date. Such a procedure would render superfluous the Code's provisions for adequate protection of a creditor's petition date interest in depreciable collateral. *See In re Cason*, 190 B.R. at 927–28; *In re Kennedy*, 177 B.R. at 972. The Code's adequate protection provisions are available to protect a creditor from losses it might incur due to depreciation of the collateral's value during the period preceding plan confirmation. *See In re Delta Resources*, 54 F.3d at 729; *In re Cook*, 205 B.R. 437, 441 (Bankr.N.D.Fla.1997); *In re Cason*, 190 B.R. at 928; *In re Kennedy*, 177 B.R. at 972; *In re Dunes Casino Hotel*, 69 B.R. 784, 793–94 (Bankr.D.N.J. 1986); *Matter of Melson*, 44 B.R. 454, 456–57 (Bankr.D.Del.1984); *In re Nixon Mach. Co.*, 9 B.R. 316, 317 (Bankr.E.D.Tenn.1981) (automatic stay protects status quo for debtor; adequate protection protects status quo for secured creditor). Thus, if the Creditor's secured status were based on the pickup's petition date replacement value, the Court would effectively negate an important function of the Code's adequate protection provisions.[2] *See In re Cason,*

---

**2.** Fixing secured status based on replacement value at the petition date would not entirely

190 B.R. at 927 (court refused to "read the statute in a way that deprives creditors of such a fundamental bankruptcy principle as adequate protection").

 When Debtor filed his petition, the automatic stay prevented Creditor from realizing the liquidation value of the pickup and applying the proceeds to the outstanding debt. Because the pickup's value is inherently depreciable, Creditor may have had reason to move the Court, either for relief from the automatic stay pursuant to Section 362(d)(1), or to condition Debtor's retention and use of the pickup to adequately protect its interest pursuant to Section 363(e). Furthermore, because Creditor was in the best position to appreciate the risk to its interest, and to move for adequate protection, it was properly Creditor's duty to consider whether to take such action. *See In re Adams,* 2 B.R. 313, 314 (Bankr.M.D.Fla.1980) (citing *In re Pennyrich Int'l,* 473 F.2d 417 (5th Cir. 1973)). The canons of statutory construction direct the Court to construe statutes in a manner that will give meaning to all sections of the Code if possible. *See In re Cason,* 190 B.R. at 928 (citing *Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)). Accordingly, the Court will base its determination of Creditor's secured status on the pickup's confirmation date replacement value.

## II. *Merits of Argument for Valuation as of Date of Petition for Purposes of Chapter 13*

The Code provides that a creditor's secured status should be determined based on collateral's confirmation date replacement value, and that a creditor, concerned about depreciation losses in collateral's pre-confirmation liquidation value, may pursue its adequate protection rights.

negate the Code's adequate protection provisions. For example, Creditor's interest in the pickup might be inadequately protected from catastrophic damage if Debtor failed to maintain proper insurance.

Nevertheless, the judicial-efficiency-based argument for fixing secured status on the petition date merits attention, at least in matters concerning property of inherently depreciable nature in Chapter 13 cases in this district.

Judicial efficiency served as one prong of the district court's argument for reversing the bankruptcy court in *In re Johnson,* 165 B.R. 524 (S.D.Ga.1994), *rev'g* 145 B.R. 108 (Bankr.S.D.Ga.1992). In *In re Johnson,* 145 B.R. 108, the bankruptcy court determined a creditor's secured status based on collateral's confirmation date value, and held that the creditor would be entitled to a superpriority claim pursuant to Section 507(b) [3] to the extent its interest lost value due to pre-confirmation depreciation. *In re Johnson,* 145 B.R. at 114–15. The district court reversed the bankruptcy court, arguing that authorization of a superpriority claim "unnecessarily complicate[d] the administration of the secured party's claim[.]" *In re Johnson,* 165 B.R. at 528–29. The district court stated further that " 'the proposed disposition or use' language in § 506(a) ... [was] intended to address more significant value determinations than the relatively minor league valuations required in the Chapter 13 cramdown context." *Id.* at 529; *but see Associates Commercial Corp. v. Rash,* 117 S.Ct. 1879, 1885 (1997) (precise language regarded to be "of paramount importance" to decision in a Chapter 13 case).

Courts taking the multiple valuations approach have rejected the rationale of judicial efficiency for fixing secured status as of the petition date. *See In re Cason,* 190 B.R. at 927; *In re Kennedy,* 177 B.R. at 973. In *In re Kennedy,* the court argued that

[m]otions requesting Section 361 protection in Chapter 13 cases are not routine

**3.** Section 507(b) gives a creditor a "superpriority" claim that takes precedence over all other priority claims provided for under Section 507 if adequate protection provided under Sections 362, 363, or 364 fails to actually protect the creditor's interest.

and not necessary for all secured creditors. Either the secured property is not declining in value or an agreement has been reached with the debtor in many cases. Therefore, the added work argument is a red herring.

*In re Kennedy,* 177 B.R. at 973. It would seem, however, that the circumstances of the courts that reject the argument from judicial efficiency are somewhat different from those of this Court. Because the Middle District of Georgia has a very high volume of Chapter 13 filings, the argument for fixing secured status as of the petition date has certain merit that cannot be easily dismissed.

If every creditor in this district, secured by inherently depreciable collateral, were forced to initiate proceedings to ensure adequate protection of its interests, this Court would face an avalanche of contested matters. Likewise, the legal expense of protecting the interest of such creditors would substantially increase. It appears that motions for Section 361 protection are not routine in Chapter 13 cases because determination of secured status based on collateral's confirmation date replacement value typically accounts for the collateral's petition date liquidation value that the automatic stay prevents the creditor from realizing prior to confirmation. This case serves as a good example because the pickup's replacement value of $17,325.00 is probably more than the amount Creditor would have realized on the petition date if the automatic stay had not prevented Creditor from initiating proceedings to re-possess and liquidate its interest in the pickup.

A creditor secured by inherently depreciable collateral cannot be certain, however, that a Chapter 13 debtor's plan will be confirmed before the collateral's replacement value depreciates to an amount less than its petition date liquidation value. The prudent and diligent creditor must be mindful of the risk that confirmation may be delayed. Accordingly, but for the multiple valuations approach adopted here, such a creditor, secured by inherently depreciable collateral, would have to move for adequate protection immediately upon notice of a debtor's petition for protection under Chapter 13. Such creditors are numerous due to the unusually large percentage of Chapter 13 cases filed in this district. For this reason, the Court cannot so easily dismiss the judicial efficiency argument as the courts in *In re Kennedy* and *In re Cason* did.

III. *Conclusion: Formula for Determining Secured Status of Creditors Secured by Inherently Depreciable Collateral in Cases Under Chapter 13*

 The Court concludes that because Creditor is secured by inherently depreciable collateral, and is party to a case under Chapter 13, Creditor's secured status should be determined based on the greater of the pickup's replacement value as of the confirmation date, or on its liquidation value as of the petition date.[4] The multiple

4. The Bankruptcy Court for the Southern District of Georgia recently announced a decision that rests upon the same basic proposition as the formula articulated here. *See Davis–McGraw, Inc. v. Johnson (In re Johnson),* 247 B.R. 904 Chapter 13 Case Number 97–13584, (Bankr.S.D.Ga., Augusta Division, December 23, 1999) (unpublished) (Dalis, J.). The proposition is that while a creditor's secured status for the purpose of Section 1325(a)(5)(B) should be determined based on collateral's confirmation date replacement value, the creditor should also be treated as adequately protected for at least, but for no more than, the collateral's petition date liquidation value. In *Davis–McGraw,* the court addressed issues that arose when the debtors surrendered collateral post-petition, liquidation of the collateral did not satisfy the creditor's secured claim, and the debtors sought to modify their plan to classify the remaining balance as an unsecured claim. Courts are divided on this issue. Some treat such deficiencies as unsecured, *see In re Rimmer,* 143 B.R. 871, 875 (Bankr.W.D.Tenn. 1992), and others require debtors to continue to treat them as secured claims, *see Matter of Coleman,* 231 B.R. 397, 400 (Bankr.S.D.Ga. 1999). In *Davis–McGraw,* the court reached a conclusion that treated the creditor as having moved the court for adequate protection

454

valuations approach to determining a creditor's secured status pursuant to Section 506(a) will be adopted, and because Creditor's secured status should be determined based primarily upon the pickup's confirmation date replacement value of $17,325.00, the Court holds that Creditor's objection to confirmation of Debtor's Chapter 13 plan must be sustained unless Debtor modifies his plan to reflect that Creditor's claim is secured in the amount of $17,325.00. Such a valuation would necessarily create a general unsecured claim of $788.79 for creditor. In addition, Creditor will be allowed to produce evidence that the petition date liquidation value of the pickup was greater than $17,325.00 prior to confirmation. If the Court makes such a finding of fact, then Debtor's plan must be modified to reflect that Creditor holds a secured claim in the amount adopted by the Court as the petition date liquidation value. To the extent the Court has devised a legal fiction that treats creditors in cases under Chapter 13 who hold claims secured by inherently depreciable collateral as having moved the court for adequate protection prior to confirmation, the fiction is a necessary one.

of its interest in collateral's petition date liquidation value as of the petition date. The court required the debtors' modified plan to afford the creditor a Section 507(b) superpriority claim to the extent that the surrendered collateral's petition date liquidation value exceeded the amount the creditor received from debtor on the claim under the plan plus the amount the creditor realized from liquidation of the collateral after debtor surrendered it. The debtors were required to afford the creditor an additional unsecured claim in their modified plan for any deficiency remaining to the extent that such deficiency was greater than the collateral's petition date liquidation value. The end result was to put the creditor in the modified plan in the same position as if the debtor's original plan had elected to surrender the collateral pursuant to Section 1325(a)(5)(C). Such a result requires treating the creditor as adequately protected for the petition date liquidation value of collateral.