**In re Michael & Lynette ADAMS, Debtor.**

No. 99–B–04507.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 26, 2002.

**276**

Tom Vaughn, Chicago, IL, trustee.

Erik Martin, Erik A. Martin & Associates, Chicago, IL, for Debtor.

### MEMORANDUM OPINION ON FORD'S MOTION FOR A NEW TRIAL

JACK B. SCHMETTERER,
Bankruptcy Judge.

The issue discussed here arose in the Chapter 13 Bankruptcy case of Michael and Lynette Adams ("Debtors").

Following the original ruling herein discussed in an opinion published at 270 B.R.

263 (Bankr.N.D.Ill.2001) ("Opinion"), creditor Ford Motor Company ("Ford") moved for a new trial under Fed.R.Bankr.P. 9023, seeking to reverse an earlier ruling entered December 4, 2001.[1] Relevant history and facts were discussed in the earlier opinion and will not be fully repeated here. Nor will the reasoning in that Opinion be repeated here, though it is now reaffirmed by this reference.

However, a brief synopsis is helpful to understanding the present analysis.

The values of Ford's secured claims on two vehicles were not specified in Debtors' Chapter 13 Plan. Although scheduled as a creditor, Ford did not file its secured claims on two vehicles until nearly four months after confirmation of Debtors' Chapter 13 Plan. Ford later repossessed both vehicles after Debtors defaulted and the stay was modified. Debtors then moved to "disallow" Ford's secured claims under 11 U.S.C. § 502(b) of the Code. However, for reasons outlined in the earlier Opinion, Debtors' motion was treated under 11 U.S.C. § 506(a) as one to value collateral at zero and to reconsider and recalculate the remaining balances owed to Ford under 11 U.S.C. § 502(j). Ford had argued that Debtors were estopped from challenging its claims after confirmation. However, as was pointed out in the Opinion, Ford could not invoke the doctrine of collateral estoppel under applicable Circuit authority because it had not filed its claims prior to confirmation and the Plan did not value its collateral. After determining the amount Ford received from sale of the repossessed vehicles and payments to it from the Chapter 13 Trustee, Ford's claims were reduced by those amounts, and the remainders of its claims were designated as unsecured.

---

1. Debtors' counsel opposed Ford's Motion but waived the right to file any brief in response, thus denying the Court their views on issues presented here.

Ford does not offer new evidence or quarrel with factual findings in the earlier Opinion, but now raises four primary arguments in support of its motion for a new trial: (1) Section 506(a) precludes reconsideration of Ford's claim after Plan confirmation; (2) alternatively, even if Debtors can have Ford's claim reconsidered post-confirmation, they are restricted to valuation of the autos as of the bankruptcy petition filing date or confirmation date; (3) the balance of equities favors Ford; and (4) the deficiency price received from sales of the vehicles shows retrospectively that Ford was not adequately protected prior to such sales and therefore it is entitled to a superpriority claim to recover the deficiency.

For reasons discussed below, Ford's motion for a new trial is denied by separate order.

## DISCUSSION

### Standards for Motion for a New Trial

■ Fed.R.Civ.P. 59(a) [applicable here under Rule 9023(a) Fed.R.Bankr.P.] provides: "A new trial may be granted to all or any parties and on all or any part of the issues ... (2) In an action tried without a jury, for any reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United states." Under that rule, the court should allow a new trial only if the movant shows that a new trial is needed to prevent a "miscarriage of justice." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1346 (3rd Cir.1991). The standard applied is the same both for jury verdicts and for judgments rendered by the court. *Compass Tech. v. Tseng Labs.*, 71 F.3d 1125, 1131 (3rd Cir.1995). In deciding whether to grant a new trial it must be determined whether the judgment was contrary to law, is against the manifest weight of the evidence, the damages are excessive or insufficient, or if for other reasons the judgment was not fair to the moving party. *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 516 (7th Cir.1993).

The Opinion followed hearings at which evidence was received, and so it resolved a "contested proceeding" in bankruptcy under Rule 9014 Fed.R.Bankr.P. The ruling is therefore subject to reconsideration through the pending motion for new trial.

### Ford's Assertion that Debtors cannot Reconsider its Claim after Confirmation

■ Ford's present argument that Debtors cannot seek reconsideration of the Ford claims after confirmation is analogous to its earlier assertion that Debtors were precluded from challenging the value of Ford's claim under the doctrine of *res judicata.* That assertion was considered and rejected in the prior Opinion. However, Ford now restates the argument under § 506(a) and offers *In re Ross*, 162 B.R. 785 (Bankr.N.D.Ill.1993), as support for its position that Section 506(a) "mandates" that Debtors could only value its claim at confirmation. In this case Ford filed no claims prior to Plan confirmation, so its argument really comes down to a suggestion that the Debtors should have attacked its claims prior to confirmation and before those claims had been filed. Analysis of this position must begin with Section 506(a):

a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed

claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.*

11 U.S.C. 506(a) (emphasis added).

Contrary to Ford's assertion that valuation of a secured claim can only occur at or prior to confirmation, § 506(a) actually allows multiple valuations at different points in a case:

For example, particularly in the Chapter 11, 12 or 13 context, the amount of a single item of property may be valued in different ways depending on the context of valuation. At the outset of a case, the secured claim might be fixed at one amount in connection with a request for adequate protection or relief from the stay. Later on, it might be fixed at another amount in connection with a determination of whether the creditor is adequately protected if a senior or equal lien is granted to a post petition lender pursuant to section 364(d). Later still, the claim might be fixed at yet another amount in connection with a proposed disposition of the collateral, and at still another amount for purposes of a plan. Thus, the amount of any claim secured by collateral may be regarded as something of "a moving target."

4 *Collier on Bankruptcy* ¶ 506.03[7][f] (15th Ed. Rev.2001).

Ford also misinterprets the holding of *Ross*, 162 B.R. at 789 (Bankr.N.D.Ill.1993) (a confirmed plan constitutes a contract between debtor and creditor). In *Ross*, the creditor filed a claim for $11,881.85 in the debtor's Chapter 13 Bankruptcy. *Id.* at 787. The creditor's claim in *Ross* was an aggregate amount and did not seek to value the collateral (a car). The debtor's plan bifurcated the claim pursuant to Sec-

tion 506(a) into a secured claim of $4,000. *Id.* at 789–90. The creditor did not object to this amount and the plan was confirmed. *Id.* at 789–90. Two years after confirmation both the debtor and creditor complained about the auto valuation. *Id.* at 787. The debtor claimed that such valuation was too high and the creditor argued that it should be secured for the full $11,881.95. *Id.* at 787, 790. The court held that both parties were bound by the plan which was confirmed without objection. *Id.* at 790 ("Accordingly, both parties agreed to the plan as confirmed and both parties will be forced to comply with its terms.").

Thus, the rule enunciated in *Ross* is the same as that articulated by a panel of the Seventh Circuit in *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir.2000). The present case is distinguished from *Adair* because Ford in this case failed to file any claim prior to confirmation. *See* earlier Opinion herein, *Adams*, 270 B.R. at 270–71. *Ross* is clearly distinguishable for the same reason.

■ Ford asserts that Debtors could have filed "a motion similar to that presently before the court" prior to confirmation. (Ford Mot. For New Trial Ford ¶ 5). It appears to imply that Debtors could have filed a proof of claim on behalf of Ford and then objected to it, since one cannot value a claim under § 506(a) or object to a claim under § 502(b) prior to that claim actually being filed under § 501. While Debtors had the option of filing a claim on Ford's behalf under 11 U.S.C. § 501(c), Rule 3004 Fed.R.Bankr.P., they were not required to file such a claim. *Matter of Danielson*, 981 F.2d 296, 298 (7th Cir.1992) (the statute says "may" rather than "must" to avoid any implication that a debtor *must* file a proof of claim on behalf of a creditor). The Code presumes that Ford was in the best posi-

tion to protect its own interest. *Matter of Gregory,* 705 F.2d 1118, 1123 (9th Cir. 1983) (a creditor with notice of Chapter 13 ignores confirmation proceeding at its peril). Ford cannot now shift responsibility for protecting its interest to Debtors.

Finally, Ford's assertion that there is no authority for valuing its claim "two years postpetition" is a restatement of an argument by it that was rejected in the prior Opinion. *See Adams,* 270 B.R. at 271. *In re Strong,* 203 B.R. 105, 109 (Bankr. N.D.Ill.1996), was earlier cited wherein under analogous circumstances a debtor was allowed to value a claim pursuant to § 506(a) nearly three years after confirmation.

### Ford's Assertion that Debtors are restricted to Replacement Value

■ Ford contends that under § 1325(a)(5)(B) any reconsideration of its claim must be based on value of the collateral at either the petition date or plan confirmation date. The issue thus presented is whether § 1325(a)(5)(B) can be applied post-confirmation. This presents an issue of interpretations controlled by statutory language unless the statute is ambiguous. *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999).

Section 1325(a)(5)(B) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each *allowed secured claim provided for by the plan*—

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of *property to be distributed under the plan on account of such claim is not less than the amount of such claim.*

11 U.S.C. § 1325(a)(5)(B) (emphasis added).

Section 1325 provides bankruptcy judges with a checklist that must be used before confirming a Chapter 13 Plan. Ford specifically relies on the requirement in subsection § 1325(a)(5)(B)(ii). That subsection places a secured creditor in the same position as it would have been in if the debtor had surrendered the collateral prior to confirmation. 8 Collier, *supra,* ¶ 1325.06[3][b][B]. The debtor is thereby required to compensate the secured creditor through interest payments because the creditor is unable to liquidate its collateral immediately, and must instead rely on deferred payments from the debtor. *Id.* For purposes of § 1325(a)(5)(B)(ii), a secured creditor with an allowed claim has an "allowed secured claim" to the extent determined by Section 506(a). *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 239, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). A claim is "provided for by the plan" when the plan makes explicit provision for its treatment. *Cen Pen Corp. v. Hanson,* 58 F.3d 89, 94 (4th Cir.1995) (citation omitted).

Ford now seeks to apply § 1325(a)(5)(B)(ii) to its claims filed after Plan confirmation. However, the plain language of the statute shows that it only applies to allowed claims that have been bifurcated under § 506(a) prior to plan confirmation. Here, Ford's claims were not filed until four months after confirmation, nor were its secured claims valued in Debtors' plan. Thus, Ford did not at confirmation have allowed secured claims for purposes of § 1325(a)(5)(B)(ii).

Apart from the statute itself, Ford relies on *In re Barnes,* 32 F.3d 405 (9th Cir.1994) and *In re Byrd,* 250 B.R. 449 (Bankr. M.D.Ga.2000) for support. However, these opinions are legally and factually inapposite to the present case. Both *Barnes* and *Byrd* involved preconfirmation objections to amounts of allowed secured

claims. In *Barnes*, a panel of the Ninth Circuit reversed where the confirmed plan did not comply with § 1325(a)(5)(B)(ii). *Barnes*, 32 F.3d at 407. The debtors' plan proposed to pay the secured creditor over 19 years and during the permitted five year maximum plan period would have paid seventeen thousand dollars less than the creditor's allowed secured claim in that case. *Id.* The panel rejected the debtors' contention that § 1325(a)(5)(B)(ii) was not mandatory and that the bankruptcy judge had discretion to ignore the present value requirement contained therein. *Id.* at 407. Further, the panel held that the plan violated the time limit in § 1322(c). *Id.* at 407–08.

In *Byrd*, the court weighed the advantages and disadvantages of valuing collateral as of the petition date or the confirmation date, and held that the creditor was entitled to the greater of the amount on either date. *Byrd*, 250 B.R. at 453. The issue in *Byrd* was what valuation method to use for purposes of section 506(a), not whether § 1325(a)(5)(B)(ii) required the court to use the petition date or confirmation date to value the collateral. *Id.* at 451. In the present case, the method of valuing the collateral was chosen by Ford when it repossessed and sold the vehicles, and the collateral was not valued under § 506(a) until after the security was liquidated. Thus, the collateral was valued in the earlier Opinion at zero because that collateral had been repossessed and sold prior to valuation. As stated in one of the cases cited by Ford, "a claim simply cannot be secured when nothing secures it." *In re Johnson*, 247 B.R. 904, 908 (Bankr. S.D.Ga.1999). Ford now invokes the present value statute to prevent Debtors from valuing its secured collateral at zero. However, it cannot use § 1325(a)(5)(B)(ii) to increase the value of its assets above what it received from the marketplace through sales of the autos. The net result

of accepting its argument would be for Ford to receive an inflated amount above actual market value of the vehicles. It would thereby receive that value twice, once from sale and again from the Debtors.

Ford could have locked in the values of its collateral at confirmation by filing timely claims. Debtors would then have been bound by the values contained therein, even after the collateral was liquidated. This is one of the benefits that the Code offers to secured creditors who file timely claims. Allowing Ford to reap this benefit now after confirmation and after sale of its collateral would allow it to avoid necessity of filing of timely claims and thereby undermine the fair and efficient administration of Chapter 13 cases. For example, if secured creditors had no incentive to file their claims prior to confirmation, debtors would face the burden of litigating valuation issues raised by tardily filed claims long after confirmation. Further, plan feasibility determinations would be difficult if not impossible should secured claims not be filed prior to confirmation. Finally, there is nothing in the holdings of either *Barnes* or *Byrd* that supports applying § 1325(a)(5)(B)(ii) to post-confirmation claims. *See In re Bernardes*, 267 B.R. 690, 694 (Bankr.D.N.J.2001) (court refuses to apply § 1325(a)(5)(B)(ii) post-confirmation to increase value of collateral so creditor who was undersecured could have secured claim).

### Ford's equitable argument

Section 502(j) provides that "a claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j). The Code does not define "cause," and bankruptcy judges have broad discretion whether to permit reconsideration of a claim under § 502(j). *In re Mathiason*, 16 F.3d 234, 239 (8th Cir.

1994). Rule 3008 Fed.R.Bankr.P. implements this statute, providing that: "(a) party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing and notice shall enter an appropriate order." Fed.R.Bankr.P. 3008. Thus, an allowed claim under § 502 can be reconsidered either before or after confirmation. *In re Gomez,* 250 B.R. 397, 399–400 (Bankr.M.D.Fla.1999). Most courts have held that the only bar to reconsideration of a claim under § 502(j) is closure of the bankruptcy case. *Id.* at 400.

█ Ford contends that Debtors are being "rewarded" for defaulting on their Chapter 13 Plan. It further suggests that allowing Debtors to receive a "windfall" in the present matter will lead to abuse of the system by unscrupulous debtors who will abuse a creditor's collateral and then surrender the collateral and seek to revalue it then. This is really a repeat of Ford's earlier similar argument. As stated in the prior Opinion, debtors may file objections to claims at anytime, *Adams,* 270 B.R. at 268, with the exception that under *Adair* they must object to secured claims that are filed prior to confirmation or be bound by those claims. Debtors cannot use such valuation objections post confirmation to amend their confirmed plans that adjudicated secured claims. *Id.* at 269–70. That is why debtors are precluded from surrendering the collateral after confirmation of such plans to force revalue of them.

Finally, Ford has failed to offer any evidence earlier or now to support its claim that Debtors have acted in bad faith. The only averment which Ford relies upon is that Debtors defaulted under their confirmed Plan. However, it did not present or offer evidence showing that Debtors default was caused by anything other than usual type of personal economic misfortune or poor planning that brought these and most debtors into bankruptcy originally.

The Bankruptcy Code does not support a presumption of bad faith under the ordinary circumstances of this case. *See Johnson,* 247 B.R. at 909 (acting in accordance with Code does not show bad faith by debtor). Even debtors who have their case dismissed prior to discharge are not presumed to have acted in bad faith. 11 U.S.C. § 349(a). Thus, absent a showing of bad faith, Debtors should not be prevented from exercising one of their fundamental protections under the Bankruptcy Code.

### Claim of Ford's Entitlement to a Superpriority Claim

█ Ford argues that it is entitled to an administrative expense claim to recover the deficiency between sale prices of the vehicles and the amounts of its secured claims, and that such administrative expense claim should be given superpriority. Administrative expense claims under the Code are governed by 11 U.S.C. § 503 which provides:

. . .

> (b) After notice and a hearing, there shall be allowed administrative expenses
>
> . . .
>
> including—
> (1)(A) The actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case[.]

11 U.S.C. § 503(b)(1)(A).

Ford never moved for allowance of an administrative claim as required, so it cannot assert it through this belated argument. But if it had done so properly, its claim would have no merit for reasons that follow.

█ Section 503(b) is a nonexclusive list of six categories of administrative claims. 4 Collier, *supra,* ¶ 503.05[1] (under § 102(3) of the Code the term "including" is not to be construed as a limitation).

Therefore, additional types of claims are entitled to administrative priority under § 503(b). However, the underlying policy behind § 503(b) must be considered when considering whether to grant such priority to a claim. *Matter of Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir.1984) (citations omitted). Otherwise, the grant of priority would violate the Code's policy of equality of distribution. *Id.* A panel of the Seventh Circuit has adopted a two-part test to determine if a claim qualifies for priority under § 503(b): (1) The debt must arise from a transaction with a debtor-in-possession; and (2) the transaction must be beneficial to the estate. *Id.* at 587. These requirements reflect the underlying policy of 503(b) which is to encourage creditors to provide credit to the estate. *Id.* at 586. Section 507(b) provides a further incentive by allowing superpriority to creditors with administrative claims that are not adequately protected. 11 U.S.C. § 507(b). Superpriority claims are paid ahead of all other unsecured claims, except certain claims under § 364(c) of the Code. 11 U.S.C. § 364(c). After confirmation, only that property needed to fund the debtor's plan is deemed property of the estate. *Matter of Heath*, 115 F.3d 521, 524 (7th Cir.1997). All other property is vested in the debtor, unless the plan or confirmation order specifies otherwise. 11 U.S.C. § 1327(b).

Ford received a total of $10,650 from sales of the two vehicles. It now seeks a superpriority claim on the $20,145.03 deficiency portion of its two secured claims, and infers (though a vague allusion to deprivation of "its constitutional rights" at Motion, ¶ 13) that a failure to give it superpriority will constitute an unconstitutional taking of its property without compensation. Thus, the two-part test enunciated in *Jartran, supra*, must be used to determine whether Ford now qualifies for an administrative claim: (1) Whether Ford gave credit to Debtors

post-petition; and (2) whether Ford's issuance of credit benefitted Debtors' estate.

Ford fails to meet both criteria. First, it is undisputed that Ford has a pre-petition claim. It does not claim to have extended credit to Debtors after the bankruptcy filing. Secondly, because Ford extended credit to Debtors prior to their filing bankruptcy, the extension of such credit could not possibly have been of benefit to Debtors' bankruptcy estate. Therefore, Ford's assertion that it is entitled to an administrative claim is without merit. Absent an administrative claim, Ford cannot qualify for a superpriority claim under 11 U.S.C. § 507(b).

Section 362(d) of the Code gives creditors the right to seek relief from the stay whenever their collateral is not adequately protected, and if the court grants the motion the creditor can recover the collateral. 11 U.S.C. 362(d). Ford availed itself of this right when it sought relief from the stay in this case post-confirmation, and that relief was granted. Thus, Ford cannot now claim that it was deprived of property that it chose to liquidate. Therefore, implicit in Ford's argument is the presumption that it had a permanent property interest in the secured amount of its filed claim even after it chose to repossess and sell the collateral. However, as stated in the prior Opinion, Debtors were not permanently bound by amounts Ford claimed in its post-confirmation filings. Rather, the amounts of its secured claims were merely presumed valid until attacked by Debtors' motion earlier considered under § 506(a) pursuant to which the collateral was valued at zero. *Adams*, 270 B.R. at 269. Thus, there is no basis for Ford's undeveloped and cryptic suggestion (Motion, ¶ 11) of an argument that it has been unconstitutionally deprived of its property.

The only case authority cited by Ford for its assertion of an administrative claim

is unpersuasive. In *Johnson* a superpriority claim was granted to a secured creditor after allowing the debtors to surrender the collateral. *Johnson*, 247 B.R. at 910. The opinion in *Johnson* attempted to put the creditor in the same position it would have been in if the debtors had surrendered the collateral at the outset of the case. *Id.* The court believed that would be the fairest solution for debtors who wished to surrender the vehicle because of financial hardship, and for the secured creditor whose collateral declined in value during the time it was held by the debtors. *Id.* at 909–10. However, the solution crafted in *Johnson* violated express provisions of the Bankruptcy Code. Section 361 of the Code defines the limits on bankruptcy court powers to provide creditors with adequate protection. Section 361(3) precludes bankruptcy courts from allowing administrative claims as a means of providing adequate protection:

When adequate protection is required ... Such adequate protection may be provided by—

. . .

. . .

(3) granting such other relief, *other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense,* as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361 (emphasis added).

Taken together, § 361 and § 362 are intended to give a secured creditor the benefit of its bargain, no more and no less. There is nothing in these statutes that permits a pre-bankruptcy secured creditor to treat unsecured creditors as guarantors of its collateral, which is essentially what the ruling in *Johnson* did by giving the secured creditor a superpriority claim on the deficiency portion of its allowed secured claim.

Further, § 1329 prohibits surrender of a secured creditor's collateral to change the claim to an unsecured claim. *See In re Nolan*, 232 F.3d 528 (6th Cir.2000). The *Johnson* court acknowledged this prohibition, but then allowed the debtors to surrender the collateral under § 502(j). *Johnson*, 247 B.R. at 908. Courts should strive to avoid interpreting one section of the Code in a way that contradicts another where possible. *See Shumate v. Patterson*, 943 F.2d 362, 365 (4th Cir.1991) (whenever possible statutes should be read in harmony and not in conflict) (citation omitted). Therefore, a construction of § 502(j) should not be adopted that runs counter to § 1329.

Finally, the grant in *Johnson* of an administrative claim on account of a prepetition debt runs counter to the two-part test outlined in *Jartran*, 732 F.2d at 587. Moreover, the grant of a superpriority claim to a pre-petition secured creditor violates the Code's policy of equality of distribution, particularly where there is no showing that such a grant will benefit the debtors' bankruptcy estate. One is hard-pressed to see any benefit to other creditors who would have their claims go unpaid should Ford's belatedly asserted superpriority claim prevail. Indeed, as earlier discussed, there are good policy reasons for not giving Ford a claim superior to claims of creditors who filed timely claims.

## CONCLUSION

Ford did not show that it is entitled to a new trial. It offered no argument showing that the earlier judgment was due to legal error which justifies a new trial, and offered no new evidence. Much of Ford's argument for a new trial was a restatement or recasting of its earlier arguments. Nor has Ford provided or offered now or earlier any evidence to substantiate its

claim that Debtors acted in bad faith. Finally, Ford has not shown that it is entitled to a superpriority claim.

Therefore, and for reasons stated in this Opinion, Ford's motion for a new trial will be denied by separate order.